Commonwealth v. Hourigan.

CASE 49—INDICTMENT—NOVEMBER 19.

# Commonwealth v. Hourigan.

### APPEAL FROM TAYLOR CIRCUIT COURT.

89  305
94  522

89  305
98  441
99  348

89  305
104  114

89  305
e110 852
110  853
111  645

89  305
114  378

89  305
124  360

1. THE COMMONWEALTH MAY PROSECUTE AN APPEAL from a decision of the trial court for the purpose of having the law declared, although the case has not been finally disposed of.

2. REVERSIBLE ERRORS.—There can be no reversal for an error of the lower court in granting a new trial in a criminal case.

3. CONTINUANCE.—After a motion for a continuance has been overruled, the court may, in its discretion, allow an amended affidavit to be filed and the motion renewed.

4. BY-STANDERS' BILL OF EXCEPTIONS.—Where the trial judge refuses to sign any bill of exceptions the appellant may have a bill certified by by-standers.

5. USE OF DIAGRAM AS EVIDENCE.—Upon a trial for murder the court erred in refusing to let a witness use or even refer to a diagram of the place where the killing occurred, although the witness had, by actual observation and measurement, verified it.

6. CONTRADICTION OF WITNESS.—A witness can not be cross-examined as to a distinct collateral matter for the purpose of contradicting him. Therefore, where, upon cross-examination, a witness for the State had, in response to questions asked him, stated that he had not said that he had heard deceased make certain statements, it was improper to allow the accused to prove that the witness had made such a statement.

7. SAME—COMPETENCY OF EVIDENCE.—The accused testified that the deceased had, at a certain time, applied to him as a physician to prescribe for a young lady, telling him that, having seduced her, he had given her medicine, from which she was suffering, and upon witness' refusal to prescribe, the deceased became angry and threatened to whip him. Held—That it was competent for the Commonwealth to prove, by the young lady referred to and by members of her family, that at the time stated there was nothing the matter with her, as it tended, indirectly at least, to contradict the accused.

8. EVIDENCE.—Testimony offered by the Commonwealth as to statements of the accused as to why his wife, a sister of the deceased, had left him, was incompetent.

9. INQUIRY AS TO THE GENERAL CHARACTER OF THE ACCUSED for morality and truthfulness should have related to the time at which he testified and not to the time of the killing.

Vol. 89—20

10. INSTRUCTION AS TO MANSLAUGHTER.—The court properly modified the instruction as to manslaughter by striking out the words: " But mere words, however opprobrious or insulting, are not sufficient provocation to reduce a killing from murder to manslaughter."

11. SELF-DEFENSE.—If the accused, by his own wrongful act toward the deceased, had made any danger to himself necessary or excusable upon the part of the deceased, then the accused had no right to present such danger as an excuse for taking the life of the deceased, and the jury should have been so instructed.

12. INSTRUCTIONS TO JURY.—The court erred in giving an instruction which gave undue prominence to certain parts of the evidence.

FINLEY SHUCK FOR APPELLANT.

1. The Commonwealth may appeal in a felony case, although there has not been a final judgment. (Commonwealth v. Cain, 14 Bush, 525; Commonwealth v. Bruce, 79 Ky., 560; Criminal Code, sec. 335.)

2. The Commonwealth was entitled to have some sort of a bill of exceptions signed by the judge. (Criminal Code, sec. 282; Civil Code, secs. 335, 337.)

3. It was error to allow the affidavit for a continuance to be amended by defendant, and to require the Commonwealth to admit the truth of the same after the continuance had been denied on the original affidavit. (Singleton v. Carr, 1 Bibb., 554; Smalley v. Anderson, 4 Mon., 369.)

4. The witness Mouser should have been permitted to use a diagram verified by him as correct, or a memorandum of distances to refresh his memory.

5. It is not competent to contradict a witness as to collateral and immaterial matters brought out upon his cross-examination. (Commonwealth v. Cornelius, 15 B. M., 539; Champ v. Commonwealth, 2 Met., 24; Kennedy v. Commonwealth, 14 Bush, 354; Crittenden v. Commonwealth, 82 Ky., 164.)

6. In order to impeach a witness, the evidence of bad character should be directed to the time of trial. (Mitchell v. Commonwealth, 78 Ky.)
   A defendant who testifies in his own behalf may be impeached as any other witness. (McDonal v. Commonwealth, 86 Ky., 13.)

7. The court erroneously modified instruction 2, as asked, by striking out the words, "but mere words, however opprobrious or insulting, are not sufficient to reduce a killing from murder to manslaughter." (Payne v. Commonwealth, 1 Met., 370; Nichols v. Commonwealth, 11 Bush, 586.)
   Instructions 3 and 4, asked by the Commonwealth, correctly defined the rights of the accused and the deceased respectively, and should have been given. (Terrell v. Commonwealth, 13 Bush, 256; Kennedy v. Commonwealth, 14 Bush, 353; Parsons v. Common-

Commonwealth v. Hourigan.

wealth, 78 Ky., 103; Minton v. Commonwealth, 79 Ky., 462; Mundy v. Commonwealth, 81 Ky., 239; Estep v. Commonwealth, 86 Ky., 42.)

8. Where the trial court has refused to render judgment upon a verdict of guilty, this court should remand the case, with directions to render judgment upon the verdict, if satisfied that no error was committed which entitled the defendant to a new trial.

P. W. HARDIN, ATTORNEY-GENERAL, H. W. RIVES, BEN. SPALD-ING, JOHN D. FOGLE, JOHN R. THOMAS, ALPHEUS BAKER, H. S. ROBINSON OF COUNSEL ON SAME SIDE.

AVRITT AND RUSSELL FOR APPELLEE.

1. No exception can be taken to an order granting a new trial, and, therefore, no appeal can be prosecuted from such an order. (Criminal Code, section 281; Terrell v. Commonwealth, 13 Bush, 246; Kennedy v. Commonwealth, 14 Bush, 340; Farris v. Commonwealth, 14 Bush, 362.)

2. Section 337 of the Criminal Code authorizes an appeal by the Commonwealth only where there has been a final disposition of the case in favor of the accused. (Commonwealth v. Cain, 14 Bush, 525; Commonwealth v. Bruce, 79 Ky., 560; Terrell v. Commonwealth, 13 Bush, 246; Commonwealth v. Van Tuyl, 1 Met., 3; Criminal Code, sec. 270.)

3. As an appeal was unauthorized, the court properly refused to permit the record to show that the bill of exceptions was tendered.

4. The Code contemplates that a bill shall be signed by the judge before any by-standers' bill can be filed. It is only to correct a bill signed by the judge that a by-standers's bill is allowed; and even then it is only allowed to correct the statement of the evidence. (Criminal Code, sec. 282; Civil Code, sections 333–340; Garrott, &c., v. Ratliffe, &c., 83 Ky., 389.)

A bill of exceptions, neither signed nor filed, is not valid for any purpose. (Corley's Ex'r v. Evans, 4 Bush, 410.)

5. The court properly confined the inquiry as to defendant's character to the date of the killing.

6. The employment of counsel to assist the attorney for the Commonwealth in a prosecution is impliedly forbidden by the Constitution.

J. R. ROBINSON, CHARLES PATTESON AND W. B. HARRISON OF COUNSEL ON SAME SIDE.

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

At the June term, 1889, of the Taylor Circuit Court, the appellee, Thomas J. Hourigan, was convicted of

murder for the killing of his brother-in-law, Samuel
B. Hays, and his punishment fixed by the jury at
confinement in the penitentiary for life. A new trial
was granted.

During the progress of the trial the Commonwealth
excepted to various decisions of the court, and now,
although the case has not been finally disposed of, it
questions, by appeal, their correctness, in order that
there may be, in the language of the Criminal Code,
a "correct and uniform administration of the criminal
law." Its right to appeal, although there has been no
final disposition of the case, was declared in the case
of the Commonwealth v. Matthews, *ante*, p. 289.

It is now urged in its behalf that no error was com-
mitted upon its part upon the trial of this case; that
a new trial was, therefore, improperly granted, and
that this court should reverse the order granting it,
and, by mandate, order a judgment to be entered in
conformity to the verdict.

Where the only question presented is, whether a
new trial should be granted, the law has wisely left
it to the judgment of the trial court. It witnesses
the entire conduct of the trial. It has every oppor-
tunity to know whether it has been a fair one, and
conducive to justice, both to the public and the indi-
vidual. Section 281 of our Criminal Code has, there-
fore, provided that its decision upon a motion for a
new trial shall not be subject to exception.

We will now inquire as to the correctness of the
decisions of the court of which the State complains.

After it had overruled a motion by the appellee to
continue the case, based upon his written affidavit, it

allowed an amended affidavit to be filed, and then held that it would continue the case unless the Commonwealth's Attorney admitted the truth of the matters stated in the affidavits. This was a matter in the discretion of the court. If an iron rule were established forbidding the amendment, under any and all circumstances, of an affidavit for a continuance, it would be devoid of reason, and would often result in injustice.

It is urged upon the part of the appellee that no question determined during the trial can be considered by this court, because, as is claimed, there is no bill of exceptions. The judge below, acting upon the idea, doubtless, that there could be no appeal by the Commonwealth in the absence of a final judgment, refused to sign or even consider any bill of exceptions. One was tendered in open court upon the part of the State, and the court asked to sign it, and then to order it to be filed. If satisfactory to him, the judge should have signed it; if not, he should have corrected it, or had it done, and then signed it. Upon its refusal, upon the ground that no bill of exceptions was proper in the case, the affidavits of several by-standers were attached to the bill, stating, in substance, that it contained a true version of what took place upon the trial. All this is shown by the record before us.

Section 282 of the Criminal Code provides that the bill of exceptions in a criminal cause shall be prepared, settled and signed as in civil cases, and subsections 3 and 5 of section 337 of Civil Code are:

"3. If the bill of exceptions be approved by the judge, he shall sign it, and it shall be filed as part of the record, but not spread at large on the order-

book. If not approved, he shall correct it, or suggest the correction to be made, and sign it. A party objecting to the judge's correction of an exception which purports to state the evidence may, within five days after the bill is signed, file the exception as written by him, if its truth be attested by the affidavits of two by-standers. * * *

"5. If the judge who presided at the trial do not preside when a motion for a new trial is overruled, the bill of exceptions may be certified by by-standers." * * *

Prior to the adoption of the Code of Practice, if a judge refused to sign any bill, it could be certified by by-standers. (Kennedy v. Trustees of Covington, 4 J. J. M., 543; Arnold v. Leathers, 2 Dana, 287.) If this be not still the law, then in case of a refusal a party would be remediless.

It has been held by this court that where a judge certifies by bill his own rulings and the exceptions thereto, it can not be controverted by affidavits, although what he may certify as the evidence in the case may be so controverted when in the form of a bill of evidence. (Garrott, &c., v. Ratliff, 83 Ky., 384.) In this case, however, he refused to sign any bill.

It was held in Hayden v. Ortkeiss' Adm'r, 83 Ky., 396, that where further time is given to prepare and present a bill, and the absence, by reason of death or otherwise, of the judge who presided at the trial prevents its being signed by him within the allotted time, it may be certified by by-standers, and, in our opinion, a fair construction of all the Code pro-

visions relating to this subject, considering also the rule existing prior to their adoption, authorizes such .a course in a case where the judge refuses to sign any bill whatever.

Upon the trial, the court erroneously refused to let .a witness use or even refer to a diagram of the place where the killing occurred, although the witness had, by actual observation and measurement, verified it. Such a course is often necessary to a correct under- .standing of the case by the jury.

A witness was introduced by the State, and upon his main examination testified to the circumstances of the killing as he saw them.    Upon cross-examination he was made to say that he did not, at a certain time and place, say that he would make it hot for the father of the deceased when he came over to Campbellsville, .and that a month or two before the killing, or at any time, he did not say that he had heard the deceased say he was going to put on a false face, and go to Tom Hourigan's and beat him nearly to death, if he did not kill him. Subsequently the accused was permitted, by way of contradiction, to call a party and prove that the witness did make such statements. This should not have been permitted.    The matter to which the contradiction related was drawn out by the cross-examination by the accused of· the State's witness.    The statement was not competent as sub- stantive testimony.    It was *res inter alios*.    The credit ·of a witness may of course be impeached by proof that he has made statements out of court contrary to those .made in court, and considerable latitude is allowed in :this direction; but if they relate to a collateral fact,

not relevant to the issue, this can not be done. The·
question is, whether the matter is altogether irrele-
vant.   Clearly what the witness may have said to the·
third party was so in this instance.   The witness made·
no voluntary statement as to it, nor did the main ex-
amination relate to it in the least.   He was asked as
to it for the sole purpose of contradiction, and a wit-
ness can not be cross-examined as to a distinct collateral
matter for such a · purpose.   (Crittenden v. Common-
wealth, 82 Ky., 164; 1 Greenleaf on Evi., sec. 462; 2
Phillips on Evi., page 900.)

The conversation between Miss Yowell and the ac-
cused, as detailed by the latter, was subsequently ex-
cluded by the court, and it, therefore, properly refused
to let her testify as to it, or whether it ever occurred.
The appellee also testified that about a year before
the killing the deceased applied to him as a physician
to prescribe for a young lady, the deceased telling him,
in substance, at the time, that, having seduced her,
he had given her medicine from which she was suffer-
ing, and that he wanted the accused to relieve her;.
and that, upon his refusing to do so, the deceased·
became very angry at him, threatened to whip him,.
and said he would make him sorry for it.

The Commonwealth, by way of contradiction, there-
after offered to prove by the young lady, her mother
and step-father, that at the time indicated there was
nothing the matter with her.   It is true their testi-
mony would not have shown conclusively that the·
conversation as detailed by the accused never took
place, but it would have so tended, and while but an
indirect contradiction, yet it was competent to enable·

the jury to judge of the probability of its ever having taken place.

The testimony offered by the Commonwealth as to the statements of the accused to various parties as to why his wife, who was a sister of the deceased, had left him, was not competent. It had not sufficient bearing upon the issue to authorize its introduction, nor did it go far enough, by way of contradiction of any thing to which the accused had testified, to make it competent. If the cause of the difference between the accused and his wife were proper for investigation upon this trial, it would have been endless.

Witnesses were called by the State, and asked as to the general character of the accused for morality and truthfulness at the time he testified in the case. This was proper. The inquiry should have related to that time, and the court incorrectly held that it must relate to the time of the killing. (Mitchell v. Commonwealth, 78 Ky., 219.)

The court properly modified instruction No. 2, relating to manslaughter, by striking out the words: "But mere words, however opprobrious or insulting, are not sufficient provocation to reduce a killing from murder to manslaughter."

Instruction No. 3, asked by the Commonwealth relative to self-defense, should have been given. If the accused, by his own wrongful act toward the deceased, had made any danger to himself necessary or excusable upon the part of the deceased, then the accused had no right to present such danger as an excuse for taking the life of the accused.

Instruction "B," asked by the defense, was improp-

erly given. It relates merely to a matter of evidence which was already before the jury, and undue prominence should not have been thus given to it.

Save as indicated, the jury appear to have been properly instructed, and this opinion is ordered to be certified to the lower court as the law of the case.