(January 22, 1916.)

STATE, Respondent, v. H. C. JONES, Appellant.

[154 Pac. 378.]

CRIMINAL LAW—INSTRUCTIONS—STATUTORY CONSTRUCTION—ADMINISTRA-
TION OF OATH BY PROPER OFFICER—MOTION FOR NEW TRIAL—CON-
FLICTING AFFIDAVITS.

1.  In a criminal case the sufficiency and appropriateness of an instruction must be determined from the evidence, and where no reference is made in appellant's assignment of errors to the particular evidence relied upon in making such assignment, and the page

Points Decided.

or folio of the transcript wherein such evidence may be found is not cited in the brief, such evidence will not be considered by the appellate court in connection with an offered instruction refused by the lower court.

2. Under the provisions of sec. 7886, Rev. Codes, it is the duty of the court in a criminal case to instruct the jury upon the law of the case, but it is equally the duty of the jury to determine for itself what facts have been proved, and of this they are the sole judges. It is their province to determine the truth, force and importance of the facts which have been placed before them by the evidence. It is not the duty of the court in instructing the jury to draw inferences from the facts in proof, or to point out to the jury what inferences they might or could draw from such facts.

3. It is error for the court, in a criminal case, to give an instruction which is argumentative in form and directs the attention of the jury specially to certain portions of the evidence, and suggests to them certain inferences of fact to be drawn therefrom, thereby singling out for their consideration particular facts favorable to the defendant and ignoring other evidence having a contrary tendency.

[As to instructions on reasonable doubt, see note in 48 **Am. St.** 566.]

4. Where, in a criminal case, the matter contained in an instruction offered on behalf of the defendant and refused by the court is fully covered by another instruction given by the court, which is just as favorable to the defendant as the one refused, the court commits no error in such refusal.

5. Certain proffered instructions considered, and *held* that the lower court committed no error in refusing to give them to the jury.

6. Sec. 6055, Rev. Codes, which provides: "An affidavit to be used before any court, judge or officer of this state, may be taken before any judge or clerk of any court, or any justice of the peace, or notary public in this state," is not exclusive or a limitation upon sec. 1983, Rev. Codes, which provides: "Every county officer and every justice of the peace may administer and certify oaths." An oath taken before any officer authorized under the law to administer it has the same force as if taken before an officer particularly designated by law.

7. The ruling of the trial court will not be disturbed in passing upon conflicting affidavits, where the misconduct of the jury is in question, in support of, and in opposition to, a motion for a new trial.

APPEAL from the District Court of the Eighth Judicial District for Benewah County. Hon. R. N. Dunn, Judge.

Prosecution for murder in the second degree. Judgment for plaintiff. *Affirmed.*

F. C. Highsmith, for Appellant.

It is the practice for the judge at *nisi prius* not only to state to the jury all of the evidence that has been given, but to comment upon its bearing and weight and to state the legal rules upon the subject and their application to the particular case, and to advise them as regards the verdict they should give. (1 Brickwood-Sackett, Instructions, sec. 153.)

This common-law practice prevails in this state except in so far as it is modified by statute. The contention of the defense is established by the decision of this court in the cases of *People v. Biles,* 2 Ida. 114, 6 Pac. 120; *State v. Harness,* 10 Ida. 18, 76 Pac. 788; *State v. Knudtson,* 11 Ida. 524, 83 Pac. 226.

The defendant is entitled to an instruction upon every particular material phase of the case presented, which is supported by any evidence. (*Williams v. State,* 120 Ga. 870, 48 S. E. 368; sec. 7886, Rev. Codes.)

There was evidence supporting the contention of the defense that the deceased was of a quarrelsome disposition, while the defendant was not, which clearly entitled defendant to the instruction. (Wharton on Homicide, p. 428, sec. 258; 2 Brickwood-Sackett, Instructions, sec. 3143.)

There was also evidence as to the disparity of age and physique between the deceased and the defendant, which clearly entitled the defendant to an instruction requested thereon. (Wharton on Homicide, 501, sec. 314; *Clark v. State,* 45 Tex. Cr. 456, 76 S. W. 573; *State v. Petsch,* 43 S. C. 132, 20 S. E. 993.)

The language of sec. 6055 clearly limits the class of officers who are authorized to take affidavits for use in court. "The statutes requiring affidavits frequently specify the officer or officers before whom they may be made. An affidavit taken under such a statute before an officer not authorized by it has generally been held of no force or validity whatever, but

in some cases it has been held that these statutes are merely directory and do not prohibit the taking of affidavits before other officers, so an affidavit may be taken by an officer who by one statute is given the powers and jurisdiction of an officer expressly authorized by another statute to take an affidavit." (2 Corpus Juris, p. 327; *Swearingen v. Howser,* 37 Kan. 126, 14 Pac. 436; *Richards v. State,* 22 Neb. 145, 34 N. W. 346; *Horkey v. Kendall,* 53 Neb. 522, 68 Am. St. 623, 73 N. W. 953.)

The misconduct of the jury in not remaining together entitled defendant to a new trial. (*State v. Sly,* 11 Ida. 110, 80 Pac. 1125; *State v. West,* 11 Ida. 157, 81 Pac. 107.)

J. H. Peterson, Atty. Genl., T. C. Coffin and Herbert Wing, Assts., Ed. S. Elder and N. D. Wernette, for Respondent.

"The court has no right to point out what inference may or should be drawn from particular facts in proof." (*Duckworth v. State,* 83 Ark. 192, 103 S. W. 601.)

Requests to charge which are in the nature of a special argument to the jury under the guise of instructions of law are properly refused. (*In re Dolbeer's Estate,* 149 Cal. 227, 86 Pac. 695, 9 Ann. Cas. 795; *Hussey v. State,* 86 Ala. 34, 5 So. 484; *Campbell v. State,* 133 Ala. 81, 91 Am. St. 17, 31 So. 802; *Gordon v. State,* 140 Ala. 29, 36 So. 1009.)

Instructions must not emphasize or give prominence to particular portions of the evidence. (*State v. Quigley,* 26 R. I. 263, 58 Atl. 905, 67 L. R. A. 322, 3 Ann. Cas. 920; *Gilmore v. State,* 126 Ala. 20, 28 So. 595; *State v. Drigger,* 84 S. C. 526, 137 Am. St. 855, 66 S. E. 1042, 19 Ann. Cas. 1166; *Commonwealth v. Hourigan,* 89 Ky. 305, 12 S. W. 550; *State v. Cantlin,* 118 Mo. 100, 23 S. W. 1091; *People v. Hawes,* 98 Cal. 648, 33 Pac. 791; *Haile v. Smith,* 128 Cal. 415, 60 Pac. 1032.)

BUDGE, J.—An information was filed against appellant on January 28, 1915, in the district court of the eighth judicial district in and for Kootenai county, charging him with the

crime of murder in the second degree, in the killing of one
Charles E. Plunkitt, on or about December 1, 1914.

The crime was committed in Kootenai county in territory
which subsequently was included in Benewah county when
the latter county was created. After the organization of
Benewah county, this case was transferred to the district
court of that county for trial.

Defendant was tried before the court and jury and was
found guilty of manslaughter and sentenced to serve a term
in the state penitentiary of not less than two nor more than
ten years. Motion for a new trial was then made and over-
ruled. This is an appeal from the judgment, and from the
order of the trial court overruling appellant's motion for
a new trial.

Appellant specifies four assignments of error: (1) The
court erred in refusing defendant's instruction No. 1;
(2) the court erred in denying defendant's motion to strike
from the record the affidavits of ten certain jurors; (3) the
court erred in denying defendant's motion for new trial;
and (4) the court erred in entering judgment and passing
sentence on the verdict. These assignments of error will be
discussed and disposed of in their order.

The instruction offered and refused, upon which the first
error is predicated, is as follows:

"You are to determine from the evidence the state of mind
of the defendant when he shot and killed the deceased (if he
did so) and in that connection you may consider threats (if
any) made by the deceased, either expressed or implied, re-
garding the defendant, the reputation of the deceased, (if
such it was) as a violent and dangerous man, the defendant's
personal knowledge (if such he had) that the deceased was a
violent and dangerous man, the relation of the deceased and
the defendant, and all other facts in the case, that may shed
light on the case.

"And you are further charged that the relative size and
strength of the deceased and the accused should be considered
by you in determining the question whether or not the defend-

ant had reasonable grounds to apprehend death or great bodily harm at the hands of the deceased.

"And in this connection, you are further instructed that the defendant is not required to wait until an actual assault made upon him has reached a stage where resistance would be useless. If the situation is such that a reasonable man in the situation of defendant would be justified in believing that his life is in danger or that he was in danger of great bodily harm being committed upon him, he could act; and what was apparent to him should be considered by you as the real danger."

That portion of the first paragraph of appellant's requested instruction which refers to threats is subject to numerous objections, but we will not detail them all. It is a cardinal rule that the sufficiency and correctness of an instruction must be determined from the evidence; and we fail to find any reference in appellant's assignments of error, nor does he direct our attention in his brief by folio or page of the transcript, to any evidence therein showing that the deceased made threats regarding appellant either expressly or impliedly. Under the well-known rule of practice, where no reference is made in the brief to the page or folio of the transcript where evidence relied upon can be found, such evidence will not be considered by this court in connection with an offered instruction refused by the lower court.

We find in the case of *Campbell v. State,* 133 Ala. 81, 91 Am. St. 17, 31 So. 802, the following instruction was requested by defendant:

"The court charges the jury that any threats made by deceased toward defendant, if such threats are shown to have been made by deceased, whether recently made or not, may be considered by the jury, in connection with all the other evidence of the case, in determining whether or not there was real or apparent danger to defendant at the time he fired the fatal shot."

It will be seen that this instruction is practically the same as appellant's proffered instruction in the case at bar. The supreme court of that state held that the instruction had

been properly refused for the reason that it was argumentative.

That portion of the first paragraph of appellant's requested instruction in respect to the reputation of the deceased as a violent and dangerous man and the appellant's personal knowledge of this fact, is clearly objectionable, on the ground that it is not within the province of the court to select a particular fact and suggest to the jury what effect they may give it. The jury are to consider all the evidence, and base their verdict upon their conclusions from it as a whole. (*Carpenter v. State,* 62 Ark. 286, 36 S. W. 900; *Gilmore v. State,* 126 Ala. 20, 28 So. 595; *Commonwealth v. Hourigan,* 89 Ky. 305, 12 S. W. 550; *State v. Cantlin,* 118 Mo. 100, 23 S. W. 1091.)

We will refrain from comment upon the phrase of the first paragraph of appellant's refused instructions as to the relation of the deceased and the appellant, since our attention has not been directed in the brief to any testimony in the transcript bearing upon this matter.

The entire first paragraph of appellant's proposed instruction is subject to the objection that it is argumentative, and is an effort on the part of appellant, by the medium of an instruction, to call attention to, and to emphasize, certain parts of the evidence particularly favorable to him.

The second paragraph of appellant's proposed instruction, with reference to the relative size and strength of the deceased and the accused, we find is substantially what was contained in an instruction requested by defendant and refused by the court in the case of *Gordon v. State,* 140 Ala. 29, 36 So. 1009. It is as follows:

"The jury may consider the age and size and character of the defendant and the size and age and character of the deceased, in connection with all the other evidence in this case, in order to determine whether the defendant was impressed with a reasonable necessity, either apparent or actual, to shoot."

In that case the supreme court held on appeal that the instruction was bad for the reason that it was argumentative.

The instructions quoted from the cases of *Campbell v. State* and *Gordon v. State, supra,* were both offered, as was the one in the case at bar, for the express purpose of determining the state of mind of the defendant when he committed the act with which he was charged, but neither of them is as far-reaching in an effort to emphasize and give undue prominence to isolated facts, as the one we have here under consideration.

Under the provisions of sec. 7886, Rev. Codes, the court, in charging the jury, must state to them all matters of law necessary for their information, but is not required, and it would be error, to charge the jury, either of its own motion or by giving requested instructions, with respect to any particular matters of fact. It is the duty of the court to instruct the jury upon the law of the case, but it is equally the duty of the jury to determine what facts have been proved, and of this they are the sole judges.

It will be observed from a reading of the first and second paragraph of appellant's requested instruction that the attention of the jury is directed to certain facts favorable to appellant for the purpose of indicating that he was entitled to have these facts more carefully scrutinized and weighed than other evidence adduced on the trial which tended to prove his guilt of the crime charged. In short, the jury are invited, in this instruction, to treat lightly all of the facts in the case except the particular ones pointed out as being more advantageous to appellant. The jury are told to consider the threats made by the deceased, either express or implied, regarding the appellant. They are not admonished to consider threats or conduct of the appellant against the deceased. They are advised to consider only the reputation of the deceased as a violent and dangerous man, but not that of the appellant. By adopting this method, counsel for appellant sought to have the court argue to the jury, through the instruction, that from a consideration of these particular facts to which their attention was then directed, they would be warranted in reaching the conclusion that the appellant's

mind was in such a condition of fear as to wholly justify him in committing the deadly assault as an act of self-defense.

While it was proper for the trial court to permit evidence to be introduced showing the relative size and strength of the deceased and appellant (*State v. Buster, ante,* p. 110, 152 Pac. 196), yet we know of no rule of law which imposes the additional duty upon the court of saying to the jury, for the benefit of a defendant, that if the deceased is a larger man than the defendant, the defendant is, for that reason alone, justified in committing a murderous assault upon him. Nor should the size of the deceased necessarily determine the question of whether a defendant has reasonable grounds to apprehend death or great bodily harm. If, in other words, it is incumbent upon the trial court to point out and call attention to certain acts and conduct of the deceased, and to comment upon the relative size and strength of the deceased and the defendant, it is equally its duty to call to the attention of the jury certain facts which may be damaging to the defendant.

All of the facts in this case were before the jury, and it was for them to determine the truth, force and importance of those facts. It certainly was not the duty of the court to draw inference from the facts in proof. Neither was it proper for it to point out what inferences the jury might or could draw from them.

The rule seems to be that where an instruction is argumentative, and directs the attention of the jury especially to certain portions of the evidence, and suggests to them certain inferences of fact to be drawn therefrom—thus singling out for their consideration particular facts favorable to the defendant and ignoring, by failing to particularize, other evidence having a contrary tendency—the giving of such an instruction is error.

We think, therefore, that the first two paragraphs of appellant's requested instruction were properly refused by the court, as we deem such an instruction to be argumentative, giving undue prominence to certain portions of the evidence

and suggesting inferences of fact to be drawn therefrom by the jury.

The matter contained in the third and last paragraph of appellant's requested instruction was fully covered in the instructions given by the trial court; and as the instructions given were more favorable to appellant than the one asked, he cannot be heard to complain. The instructions given covering this particular point read as follows:

"If the jury believe from the evidence that the defendant, H. C. Jones, at the time he fired the fatal shot, which killed the deceased (if he did fire the fatal shot and kill him), believed, and had good reason to believe that his life was in imminent danger, or that he was in danger of receiving great bodily harm at the hands of the said Charles E. Plunkitt, then I instruct you that the defendant was justified in firing said shot, and you should acquit him. . . . . "

"You are further instructed, that before the jury can convict the defendant they must be satisfied to a moral certainty not only that the proof is consistent with the defendant's guilt, but that it is wholly inconsistent with every other rational conclusion, and unless the jury are so convinced by the evidence of defendant's guilt that they would venture to act upon that decision in matters of the highest concern and importance to their own interest, then they must acquit the defendant."

We are fully satisfied that the foregoing instructions given by the court, in connection with other instructions given, correctly stated the law of self-defense as applied to the facts in this case, and that the appellant was in nowise prejudiced by the refusal of the court to give the instruction he requested.

The second assignment of error is based on the action of the trial court in refusing, on motion for a new trial being made by appellant, to strike from the record the affidavits of the ten jurors of the panel before which the defendant was tried, for the reason that the same were sworn to before the prosecuting attorney, deputy clerk of the district court and chairman of the board of county commissioners—officers

of Benewah county. It is contended by counsel for appellant that the affidavits were null and void, and should not have been considered by the trial court in resisting their motion for a new trial. The question, therefore, arises whether the county officers taking these oaths are authorized so to do; and if so, can such affidavits be used before the trial court as counter-affidavits in opposition to a motion for a new trial?

Sec. 6055, Rev. Codes, provides: "An affidavit to be used before any court, judge or officer of this state, may be taken before any judge or clerk of any court, or any justice of the peace, or notary public in this state."

Sec. 1983, Rev. Codes, provides: "Every county officer and every justice of the peace may administer and certify oaths."

It is insisted by counsel for appellant that section 6055 is a limitation on section 1983, and that no affidavit can be used before any court, judge or officer of this state, unless it be taken by the officer designated in the former section. These two sections of our statutes have never been construed by this court, as the question is now before us for the first time, but we find that they were taken from the California codes, and both have received a construction by the supreme court of that state.

In the case of *Haile v. Smith,* 128 Cal. 415, 60 Pac. 1032, it was insisted that section 4118 of the Political Code of California (which corresponds with sec. 1983, Rev. Codes), gave authority to officers therein enumerated to administer and certify oaths only in proceedings peculiar to their own department or office. The court said: "While it is not improbable that this is what the framers of the code meant, still there is no such restriction in the language used, and there is no such room given for the play of construction as would warrant this court in overturning the judgment by taking that view. Neither do we think that section 2012 of the Code of Civil Procedure [which corresponds with sec. 6055, Rev. Codes] excludes all officers except those therein mentioned from taking affidavits to be used before a court. . . . . It is not confined to affidavits to be used before a court or judge, but includes affidavits to be used before any other

'officer of this state'; and we think that this section and all other sections of the same code on the subject . . . . are all cumulative, and that where a general authority is given an officer to 'administer and certify oaths', that authority cannot be limited by judicial construction to particular kinds of oaths.''

Sec. 1983, Rev. Codes, provides in express terms that every county officer and every justice of the peace may administer and certify oaths. An oath being a solemn appeal to the Supreme Being in attestation of the truth of some statement, and an outward pledge that one's testimony is given under an immediate sense of responsibility to God, it would seem that one taken before any officer authorized under the law to administer it would have the same force and effect as if taken before an officer particularly designated. It is the taking of the oath before a properly constituted official that should entitle it to weight and consideration for any purpose, rather than its administration by a particularly designated officer.

From the record in this case it appears that the ten affidavits of the jurors objected to by counsel for appellant were submitted by the state in opposition to the affidavits of McGillvray, Elixmann, Thompson and Bowers, who made affidavits to the effect—and all of their affidavits are in the same language—that when the jurors who had tried the case of the state against the appellant went upon the street of St. Maries, where the cause was tried, in company with two bailiffs, that one of the jurors, whose name to the affiant was unknown, separated himself from the other jurors, and left the presence of the bailiffs, and engaged in a conversation in a low voice with a man who was walking upon the streets in said city, whose name was also to affiant unknown; that this conversation continued in said manner for several minutes; and that affiant saw one of said jurors, whose name to affiant was unknown, leave the bailiffs and the other jurors and enter a retail store house in said town, and so absented himself from the remaining jurors and bailiffs for a period of from three to five minutes.

The counter-affidavits made on behalf of the state by the ten jurors, whose oaths were administered and certified by county officers in the manner above stated, were all directly contradictory to those made by the four above named persons for the appellant, and were to the effect that during the entire trial of said cause the jury was kept together and was in the custody of two bailiffs; that they never separated, and none of the members of the jury were ever separated to such an extent that the rest of the jurors and the bailiffs could not see and hear what was transpiring. Each of the ten jurors state positively in their affidavits, which are objected to by appellant, that they did not talk with anyone other than among themselves, and then not about the case until it was finally submitted, and that there was no separation of any one of their number from the jury or the bailiffs at any time during the entire trial of the cause.

In addition to the affidavits of these ten jurors, we have the affidavits of the two additional jurors taken before the clerk of the district court of Benewah county to the same effect; and also the affidavits of the bailiffs appointed by the court, who had charge of the jury, to the effect that during the entire trial of this cause the jury were kept together and never allowed to separate, and that affiants could see and hear what transpired at all times; that during the entire trial, none of the jurors conversed with anyone who was not a member of the jury.

We think that these affidavits, independent of the ten affidavits against which the objection that they were not sworn to before the proper officer is urged, would be sufficient to overcome the affidavits made by McGillvray, Elixmann, Thompson and Bowers. Upon an examination of the affidavits of these last named persons, it will be observed that they say they did not know the juror who, they state, talked with some person other than a juror, or the person with whom such conversation was had, or the business house which the juror is alleged to have visited. From these affidavits it could be fairly assumed either that the affidavits were intended to be so worded that a prosecution for perjury could

not be based thereon or, viewing the affidavits in a more favorable light, it seems to have been a case of mistaken identity which was made so apparent to the trial court that in passing upon them it considered they were entitled to no weight in support of appellant's motion for a new trial. It may also have appeared strange to the trial court, in view of the activity displayed at the trial in appellant's behalf by one of the affiants who was a detective, that he should be wholly ignorant of the name of the juror or the name of the person with whom that juror is supposed to have had a conversation, or the business house in the village of St. Maries in which one of the jurors is alleged to have entered, or of any other material fact that was possible of being directly contradicted by the person or persons charged with the violation of the statutes and the positive instructions of the court.

This court has the same power to pass upon affidavits furnished on motion for new trials and in opposition thereto as has the trial court, and having examined all of the affidavits submitted for and against the motion, we find there is a direct conflict as to the facts alleged in the affidavits made on behalf of appellant and those made on behalf of the state. That being true, where the misconduct of the jury is involved, the ruling of the trial court will not be disturbed. (*People v. Biles,* 2 Ida. 114, 6 Pac. 120.)

In our opinion the learned trial court did not err in refusing to give the instruction asked by appellant, or in refusing to strike the affidavits from the files, or in its ruling in denying appellant's motion for a new trial. To our minds it is very evident that no injustice has been done the appellant in this case, and that the sentence and judgment of the trial court was properly entered, and the judgment is hereby affirmed.

Sullivan, C. J., and Morgan, J., concur.