## Polly v. Commonwealth.

(Decided February 1, 1924.)

## Appeal from Perry Circuit Court

1. Homicide—Evidence Held to Sustain Conviction for Murder.—In a prosecution for homicide, evidence held to sustain a conviction for murder.

2. Homicide—Verdict of Life Imprisonment Held Justified by Evidence.—A verdict of life imprisonment on conviction of murder held justified by the evidence, and in nowise the result of passion and prejudice.

3. Criminal Law—When Appellate Court Cannot Invade Province of Jury and Say Verdict is Excessive.—Even though the Court of Appeals might feel that verdict assessing punishment was severe, it cannot invade the province of the jury, and say that the verdict is against the weight of the evidence, unless it is so excessive as to indicate passion and prejudice on their part, and to strongly indicate that a gross injustice has been done the accused.

4. Homicide—Instruction on Manslaughter Held Not Prejudicial Error.—An instruction on manslaughter, containing the words, "or while laboring under such provocation or in such a state of mind as is reasonably calculated to place him beyond his power of self-control," held not prejudicial error.

5. Homicide—One Renewing Combat Becomes Aggressor.—Where, after the original difficulty had ceased, the defendant has an opportunity of declining further combat, and he instead continues the struggle, or renews the combat, he becomes the aggressor, irrespective of whether he was at fault in bringing on the original difficulty, and is not justified in killing in self-defense.

6. Homicide—Whether Accused Renewed Combat Held for Jury.—In a prosecution for homicide, wherein defendant set up self-defense, whether after the first difficulty defendant renewed the combat, and thereby became the aggressor, held for the jury.

7. Criminal Law—Duty of Court to Instruct on all the Law of the Case.—In a homicide case, it was the duty of the court to instruct on all of the law of the case.

8. Homicide—Instructions on Manslaughter Held Not Erroneous.—It was not erroneous in a homicide case to combine the usual manslaughter instruction relating to heat and passion, or sudden affray, with one concerning defendant's mental capacity, to-wit, "if laboring under some such provocation," and "in such a state of mind as was reasonably calculated to place him beyond his power of self-control."

9. Criminal Law—No Error in Refusing Continuance, Where Absent Witnesses Testified or Affidavits were Read.—The court did not err to defendant's prejudice in overruling his motion for continuance because of the absence of three witnesses, where two of

the witnesses testified and the affidavit of the other was read to the jury.

H. C. FAULKNER and FAULKNER, STANFILL & FAULKNER for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS for appellee.

OPINION OF THE COURT BY JUDGE ROBINSON—Affirming.

On Sunday, August 15, 1922, the appellant, Enoch Polly, shot and instantly killed Munday Caudill on Leatherwood creek in Perry county, Kentucky. He was later indicted, and upon his trial at the January term of said court was convicted of murder and sentenced to the penitentiary for life, from which conviction this appeal is prosecuted.

From the evidence it appears that upon the Sunday in question the appellant and deceased (Munday Caudill), Charles Nelm, Tom Fields and Ben Caudill met near the intersection of Big and Little Leatherwood creeks. Several of the party had attended a church meeting in the neighborhood, and after remaining there a short time joined the others and began drinking from one or more bottles of whiskey that had been hidden near the approach to a bridge over one of the streams. Up to this time they had appeared to be in a pleasant mood, and no evidence of impending trouble was apparent. Shortly some altercation seems to have arisen between appellant and the deceased, as to the beginning of which the evidence varies slightly but not materially. It is admitted that the young men began striking each other with switches in a playful manner, after which some harsh words followed, resulting in the deceased striking appellant three times, throwing him into a gully. One of the witnesses testified that he was knocked down repeatedly, whereupon he became enraged, and as appellant expressed it in his testimony (page 57, transcript), he was "made terribly mad." He further claims that during the trouble he lost both his hat and pocketbook, and feeling that he had been worsted in the affray, started at once to his home some 180 yards away. In his testimony (page 46, transcript) he states that he went to his residence and after a short conversation with his wife procured a pistol and started back to the scene of the trouble, at which time Tom Fields, an eye-witness, in his testi-

mony on page 10 of the transcript, says that as appellant approached Caudill he called to him and said he had better be getting down the road, and upon seeing him coming with the gun deceased endeavored to hide behind a rock, but when appellant reached a point about fourteen steps from him he fired. The witness further states that after the first shot he called to appellant not to shoot again; and just at this time the deceased changed his position behind the rock, apparently to see where appellant stood, whereupon he fired, killing him instantly. The testimony of Ben Caudill (page 22, transcript), who claims to be in nowise related to deceased and who was also an eye-witness, corroborates practically in every detail the evidence as related by Fields. Charlie Nelm was a member of the party during the first difficulty, and testifies (page 37, transcript) that when appellant went to his house he followed him and just as he reached the woodpile in front of the door he came running out with his pistol and upon being told by the witness that it was best not to return to the scene of the trouble he answered, saying he could not afford to have a man treat him that way, and he hurried toward the others; and while he heard the shots he did not see appellant when he fired owing to bushes and undergrowth on the hillside. It seems that the father of deceased was the first to reach his body, as the killing occurred just a few moments before he passed the spot returning from church; and, as he expressed it, "found my boy lying dead by the rock." His evidence, as well as that of the eye-witnesses and several others, proves conclusively that young Caudill was in his shirt sleeves at the time of the difficulty, totally unarmed. The appellant in his testimony claims he was assaulted without provocation by deceased and during the first trouble was struck on the side of the head with a rock. This, however, is contradicted by other witnesses, who said that appellant had thrown a rock at the deceased, striking one of them. Appellant further claimed that after going to his house and discovering the loss of his hat and pocketbook, he intended to go back and secure them and fearing further trouble and possible harm to himself, carried his pistol in his hand. His brother, John Polly, in his testimony (page 61, transcript), after admitting he had served a term in the penitentiary, claimed to have been present during the first trouble, but his version does not differ materially from that of the others.

He did not see the shooting, having returned to the home of his brother a few moments before it occurred. Several witnesses (related to appellant) testified that Tom Fields and another witness for the Commonwealth had stated to them after the trouble that appellant was justified in killing Caudill, but they denied having made any such statement.

After a careful review of all the testimony offered in this case, it would appear that the first difficulty was simply the result of boyish play on the part of those concerned, during which their feelings became ruffled and the fight ensued, and upon being separated and asked to desist from further indulgence, appellant, as he expressed it, "became terribly mad," and stinging under apparent defeat and determining to avenge the insults offered, decided to secure a pistol and renew the difficulty. With this purpose in view he hurried to his home, where he claims he talked to his wife, and upon his return shot Munday Caudill in cold blood. His excuse, that he went for his hat and pocketbook, with no desire to renew the difficulty, is too flimsy and transparent to merit consideration. The fact, as shown by the testimony, that the deceased hid behind a rock upon seeing him approach conclusively demonstrates that he had neither desire nor intention to renew the difficulty, and was making every effort to escape the fury of his pursuer.

In his motion for a new trial counsel for appellant offers seven grounds upon which he relies for a reversal, with which we shall deal in their order.

1. "Because the verdict of the jury is excessive and unwarranted by the evidence, and is patently and evidently the result of passion and prejudice on the part of the jury."

With this contention we cannot agree, and from the evidence are of the opinion that this was a cold-blooded, unwarranted and malicious killing, and the verdict of life imprisonment as returned by the jury was justified by the evidence and in nowise the result of passion and prejudice on their part.

In Tetterton v. Commonwealth, 28 R. 146, the court said:

"Considering all the facts and circumstances proven as to the conduct of the deceased at and prior to the time he was killed as well as the conduct of the

appellant, we are of the opinion that he was guilty of the crime of manslaughter, but we think the penalty as fixed by the jury was rather severe. The jury, however, were the triers of the facts."

Even in cases where this court might feel that the verdict was severe, nevertheless it cannot invade the province of the jury and say that the verdict is against the weight of the evidence unless it was so excessive as to indicate passion and prejudice on their part and to strongly indicate that a gross injustice had been done the accused.

2. "Because the court erred to the prejudice of the substantial rights of the defendant in the rejection of competent evidence offered by him and which was refused to be admitted by the court."

There is nothing in the transcript indicating any merit in this contention.

3. "Because the court erred to the prejudice of the substantial rights of the defendant in allowing the plaintiff to introduce to the jury against him incompetent evidence."

The conclusion as to the second instruction applies equally to this.

4. "Because the court erred to the prejudice of the. substantial rights of the defendant in the giving of instructions 1, 2, 3, 4 and 5."

We observe that the fourth and fifth grounds are practically the same, and we will consider them together, the fifth being, because the court failed and refused to give the whole law of this case, especially because of its failure to give instructions A and B offered by the defendant, which instructions were refused by the court and filed and made part of the motion herein and endorsed by the judge "refused" and signed by him.

It appears that instructions A and B were offered by appellant, but for some reason are not contained in the record. They were mentioned in the bill of exceptions and it shows that they were filed and made a part of the record, and after being endorsed by the court were overruled; but in view of the surrounding circumstances we do not consider these omissions of especial importance.

With instruction No. 1 as offered by the court attorney for appellant contends that there was nothing in the evidence to warrant its being given, though from his argument it does not appear that he seriously considers this contention or entertains any belief in its truth.

The manslaughter instruction given by the court is as follows:

"Or if you shall not believe from the evidence beyond a reasonable doubt that the defendant Enoch Polly has been proven guilty as defined in instruction No. 1, above, but shall believe from the evidence beyond a reasonable doubt that the defendant Enoch Polly in Perry county, Ky., and before the finding of the indictment herein wilfully, feloniously and in sudden heat and passion or in sudden affray, or while laboring under some such provocation or in such a state of mind as was reasonably calculated to place him beyond his power of self-control, and without previous malice, and not in his necessary or reasonably apparent necessary self-defense so shot and wounded Munday Caudill with a pistol, a deadly weapon, so as that the said Munday Caudill immediately died thereby, then the defendant is guilty of voluntary manslaughter, included in the indictment herein, and you ought to so find and fix his punishment at confinement in the state penitentiary for a period of not less than two nor more than twenty-one years, in your discretion according to the proof."

To the giving of this second instruction attorney for appellant seriously objected, and earnestly contends that it was incomplete, misleading and calculated to confuse the jury. Attention is called to that part of the instruction which reads, "or while laboring under some such provocation or in such a state of mind as is reasonably calculated to place him beyond his power of self-control," and says: "The phrase, 'while laboring under some such provocation,' is of itself misleading," and insists that the word "labor" as used was improper, claiming that the jury did not understand its application, believing it to be interpreted as applying to manual labor. Objection is also made to the words "in such a state of mind," because as he said, "when coupled with the rest of the sentence the jury might have concluded that a man who had control of himself enough to miss his hat and pocketbook and go after them would be in such a state of mind that he could easily control his actions and refrain from shooting an enemy; or, in other words, that these instructions containing the phrases commented upon were so misleading as to cause the jury to lose the intent of the court entirely. He further objected to the instructions and al-

leges that they were confusing in the use of the phrase, "and without previous malice," after, instead of before, its qualifying part; and on the whole concludes with the assertion that the above instruction in its entirety should not have been given, citing in support thereof Shepherd v. Commonwealth, 119 Ky. 931, and Shipp v. Commonwealth, 124 Ky. 643. In these, however, we find nothing of a nature calculated to support this contention.

As stated above, appellant in leaving the scene of the combat and going to his home, where it is shown he had a conversation with his wife before securing his pistol, had ample time to seriously consider the resultant effect of his return; and it would appear that after becoming enraged and humiliated it was his deliberate intention to first arm himself and then slay his antagonist; and this fixed predetermination, the result of malice and hatred, he put into speedy execution. The evidence fails to disclose any reason tending to show the necessity of immediately recovering his hat and pocketbook or of his going armed for that purpose.

Counsel in his brief for appellee contends that appellant could not rely upon the theory of self-defense or expect to be the beneficiary of such consideration at the hands of the jury, for after abandoning the first affray he wantonly assaulted and killed the deceased, who was not armed in the second encounter. And it was immaterial whether he brought on the first trouble or not; and while appellant in his testimony contended that the deceased approached him with a rock in his hand when he returned to the scene of the shooting, and also threatened to go to the house and kill his wife, several witnesses contradicted this statement in its entirety.

In 21 Cyc. 805 it is said:

"It is well established that one who is the aggressor or provokes the difficulty in which he kills his assailant cannot invoke the right of self-defense to justify or excuse the homicide, unless he in good faith withdraws from the combat in such a manner as to show his adversary his intention in good faith to desist. It is not enough to justify or excuse the homicide that in the course of the difficulty it became necessary for defendant to kill the deceased in order to save his own life or prevent great bodily harm; but he must also have been free from fault in pro-

voking or continuing the difficulty which resulted in the killing. In such case defendant is guilty of murder or manslaughter."

In 21 Cyc. 826, where after the original difficulty has ceased the defendant has an opportunity of declining further combat and he instead continues the struggle or renews the combat, he becomes the aggressor, irrespective of whether he was at fault in bringing on the original difficulty, and is not justified or excused in killing in self-defense.  Brown v. Commonwealth, 79 S. W. 1193, 25 R. 2076; Drake v. Commonwealth, 21 S. W. 36, 14 R. 677.

In Banks v. Commonwealth, 196 Ky. 643, the court said:

"It is a well established doctrine that if one is an aggressor or provokes a difficulty or affray, he cannot invoke the right of self-defense to justify the killing of his antagonist, unless he first, in good faith, withdraws or attempts to withdraw from the combat and that, too, in a way that his adversary will see that he intends to withdraw, and he cannot justify the slaying of an adversary, because in the course of a rencounter, when to save his own life or to save himself from great bodily harm, it becomes necessary to kill, where he has been at fault in causing the difficulty in which he becomes endangered."

In Commonwealth v. Hourigan, 89 Ky. 313, it has been held by this court that:

"If the accused by his own wrongful act towards the deceased had made any danger to himself necessary or excusable upon the part of the deceased, then the accused had no right to present such danger as an excuse for taking the life of the deceased."

Therefore, considering the testimony in the case at bar and the many opinions of this court as well as others, it would appear conclusively that if after the first encounter and upon the return of the appellant armed with a pistol the deceased had killed him, his act would have been justified on the grounds of self-defense, because appellant had abandoned the first combat and returned with the evident intention of renewing it.  Acting as he did, appellant, under the rule announced in the Hourigan case, *supra,* has no right to present such danger as an excuse

for the crime of which he has been convicted. The time which elapsed between the first and the second affray is somewhat indefinite, but we are of the opinion that the question was one for the jury alone to determine, and that upon all the evidence they were justified in believing that he returned to the scene not for the purpose of recovering his hat and pocketbook but with the deliberate and premeditated intention of killing the deceased. In his testimony he admits he was terribly mad and the records show he had to go at least 180 yards from the scene of the first encounter to his home, and as he started to retrace his steps the witness Nelm cautioned him not to resume the difficulty.

Nor can it be said that appellant was free from fault in the first affray. It would appear that he and deceased were willing participants, and regardless of who was at fault in the first encounter, after he abandoned it and returned to renew the combat he could not well plead self-defense as a justification for the killing.

Counsel for appellant contends that it was the duty of the court to instruct upon all the law of the case, which is, of course, correct; and in the one at bar to have omitted an instruction on murder would have unquestionably constituted a failure to have given all the law. A further objection to instruction No. 2 is that the court combined the usual manslaughter instruction relating to heat and passion or sudden affray with one concerning defendant's mental capacity, to-wit, ''if laboring under some such provocation'' and ''in such a state of mind as was reasonably calculated to place him beyond his power of self-control;'' but we are of the opinion that it was not error to combine these two instructions.

In Taylor v. Commonwealth, 172 Ky. 136, we find a manslaughter charge approved by this court which is as follows:

''Or if you shall not believe from the evidence beyond a reasonable doubt that the defendant, J. H. Taylor, has been proven guilty of murder as defined in instruction No. 1 above, but shall believe from the evidence beyond a reasonable doubt that he did, in Pulaski county, and before the finding of the indictment, without previous malice, and not in his necessary or reasonably apparent necessary self-defense, but in a sudden affray or in sudden heat and passion

upon a provocation reasonably calculated to excite his passion beyond the power of his control shoot and kill Frank Sumner, you should in that event find him guilty of voluntary manslaughter and fix his punishment at confinement in the State Penitentiary for an indeterminate period of not less than two years nor more than twenty-one years, and state in your verdict the minimum and maximum period that he shall be so confined.''

It seems that the only material difference between the form of these instructions and those objected to in this case is in the use of the word ''labor'' in the clause ''while laboring under some such provocation,'' and also the phrase ''in such a state of mind,'' neither of which do we deem a prejudicial error. .

The 6th ground cited by appellant is:

''Because the court erred to the prejudice of the substantial rights of the defendant in overruling his motion for a continuance herein and in refusing to grant him a continuance upon the showing made in his affidavit filed in support of his said motion, and in forcing him to go to trial without the personal attendance of his witnesses therein set forth, all said witnesses being in Perry county at the time and within the jurisdiction and power of this court to bring to the court at the next term thereof.''

Harlan Banks, Arminta Banks and Green Hall are the witnesses mentioned as absent, but in the transcript of evidence it is shown that Green Hall testified on page 68, as also did Arminta Banks on page 73, and the affidavit of Harlan Banks was read to the jury.

The 7th ground, ''Because he is not guilty of murder as charged in the indictment or any ingredient thereof,'' in view of the testimony need not be considered; and the court is of the opinion that the record contains no error of a nature prejudicial to the interests of appellant. Therefore, the judgment is affirmed.

Judgment affirmed.