UNITED STATES, Appellee

v

ALAN J. KOEPKE, Airman Basic, U. S. Air Force, and
RONALD I. GEORGE, Airman Second Class,
U. S. Air Force, Appellants

15 USCMA 542, 36 CMR 40

No. 18,612 & No. 18,543

November 19, 1965

*Fred W. Shields, Esquire,* and *Major Robert S. Amery* argued the cause for Appellants, Accused. With them on the brief were *Fred W. Shields, Jr., Esquire, Colonel Robert O. Rollman,* and *Colonel Joseph Buchta.*

*Lieutenant Colonel Robert M. Haynes* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

### Opinion of the Court

KILDAY, Judge:

The Uniform Code of Military Justice provides in pertinent part that:

"**Art. 30. Charges and specifications**

"(a) Charges and specifications shall be signed by a person subject to this chapter *under oath* before a commissioned officer of the armed forces authorized to administer oaths and shall state—

(1) that the signer has personal knowledge of or has investigated, the matters set forth therein; and

(2) that they are true in fact to the best of his knowledge and belief."[1] [Emphasis supplied.]

It is with the emphasized portion of the above-quoted provision of the Code that we are here directly concerned, no

[1] 10 USC § 830.

issue having been raised concerning the other aspects of Article 30(a), supra. Both petitioners aver that they were tried on unsworn charges over the timely objection of their counsel. If, as alleged, the charges ▪ were not sworn to, the court, in light of this objection, would have been without authority to proceed, for, as stated in paragraph 29e, Manual for Courts-Martial, United States, 1951, "In no case may an accused be tried on unsworn charges over his objection." This provision of the Manual has the force of law. United States v Smith, 13 USCMA 105, 32 CMR 105.

There were six separate charge sheets in this case, equally divided between the petitioners, each with an accompanying affidavit essentially identical in form. Four of these affidavits were signed by Major Huddleston, witnessed by Captain Lyle; and two by

Major Mickler, witnessed by Captain Parker. The majors were the squadron commanders and accusers, and the captains their assistant administrative officers, at the pertinent periods. The form of affidavit utilized is as follows:

"SIGNATURE OF ACCUSER TYPED NAME AND GRADE ORGANIZATION

## AFFIDAVIT

"Before me, the undersigned, authorized by law to administer oaths in cases of this character, personally appeared the above-named accuser this day of , 19 , and signed the foregoing charges and specifications under oath that he is a person subject to the Uniform Code of Military Justice, and that he either has personal knowledge of or has investigated the matters set forth therein, and that the same are true in fact, to the best of his knowledge and belief.

SIGNATURE

GRADE AND ORGANIZATION OF OFFICER

OFFICIAL CHARACTER, AS ADJUTANT, SUMMARY COURT, ETC. (MCM, 29e, and Article 30a and 136)"

With reference to the contested issue, Captains Lyle and Parker testified that in each instance they personally observed the squadron commander affix his signature to the appropriate affidavit and that they signed thereafter. At that time they were acting in their official capacity as assistant administrative officer and with the understanding that they were thereby performing a notarial act. Major Mickler's understanding of his action herein was that he, as accuser, was signing the charge sheet under oath and attesting thereby that he was a person subject to the Code, had investigated the charges, and was satisfied that a charge should be made. Major Huddleston did not testify, his presence being waived by defense counsel. Admittedly, there was no formal swearing ceremony. It is this alleged defect, no formal swearing ceremony, which petitioners assert requires reversal of their conviction. Under the circumstances of this case we do not believe this contention has merit.

The case most frequently cited in the encyclopedias, on this precise issue, is Atwood v State, 146 Miss 662, 111 So 865, 51 ALR 836 (1927). See 39 Am Jur, Oath and Affirmation, § 13, page 499, footnotes 12 and 13; 67 CJS, Oaths and Affirmations, § 6, page 8, footnotes 95, 96, 97. In *Atwood,* the court stated:

". . . The form of the oath is immaterial so long as it appeals to the conscience of the party making it, and binds him to speak the truth. Whenever the attention of the affiant is called to the fact that his statement is not mere assertion, but must be sworn to, and he is then called upon to do some corporal act, and does it, this is sufficient to constitute an oath. *It is not necessary to have the affiant hold up his hand when taking the oath.* 20 RCL 508, § 4; Dunlap v Clay, 65 Miss 454, 4 So 118. . . . It is true that some unequivocal act must be done to distinguish between an oath and a bare assertion; an act clothed in such form as to characterize and evidence it as an oath. 20 RCL 508, § 4. Was what occurred in the present case between affiant and the justice of the peace such an unequivocal act? We think it was. The affiant went to the justice of the peace for the avowed purpose of obtaining a search warrant, and the justice of the peace knew that he came for that purpose. Both of them knew that an oath was necessary to be administered before the warrant could be issued, and with that knowledge each of them did what he considered proper for the administration of the oath. The affiant, in the presence of the justice of the peace, signed the affidavit; the

justice of the peace thereupon affixed his jurat thereto, and issued the search warrant in proper form. Although not a word was said by either in reference to an oath, they both knew an oath was necessary, and both intended that the necessary thing should be done in order to obtain the search warrant. We think, by construction, what occurred amounted to the taking of the necessary oath by the affiant. One may speak as plainly and effectually by his acts and conduct as he can by word of mouth." [Atwood v State, supra, at page 866.] [Emphasis supplied.]

In accord see the cases collated in Shepard's Southern Reporter Citations, which cite *Atwood* as authority, and see also the cases reported in the Decennial Digest, Oath, Key 1, to the same effect.

In the case at bar the understanding of the parties of the nature of their act and their intention with relation thereto is manifest. Each of the "notaries" appeared at the office of the accuser for the particular purpose of having the latter swear to the charges which he was therein preferring. Captain Lyle was directed to appear for the express purpose of going over the charge sheets with Major Huddleston "so that we would know that they were prepared correctly." After this was accomplished, Major Huddleston "put his signature down on the papers" as accuser, Captain Lyle "witnessed this," and then placed his signature on the jurat "to certify on this form." He stated that "although there was not a formal swearing ceremony, we always did this in this manner so that way I understand that he was sworn to these charge sheets as being true and correct."

According to Captain Parker, Major Mickler "was in his office with the papers and I was called in and I signed them and he signed the papers in my presence and I signed them after him." He could not specifically recall the provisions of the jurat but he testified that "we tried to comply with the provisions of the paragraph." In doing so it was his understanding that he was taking the oath of Major Mickler.

As noted above, Major Mickler understood his responsibility under Article 30 of the Code, supra, and believed that his actions were in compliance therewith.

While Congress has seen fit to require that charges shall be signed under oath, the Code does not specify what acts are necessary to constitute an oath. Paragraph 112*d* of the Manual, supra, provides:

"*There is no particular procedure which must be used in administering an oath.* As long as the prescribed oath is duly administered, any procedure which appeals to the conscience of the person to whom the oath is administered and which binds him to speak the truth is sufficient. *The customary procedure* in administering the prescribed oath to military personnel consists (1) of requiring the person taking it to place a hand upon a Bible while the oath is administered or (2) of the raising of the right hand by both the individual administering the oath and the individual taking the oath at the time of the reading thereof and the response thereto." [Emphasis supplied.]

Unquestionably, the "customary procedure" was not followed in this case as there was no such formal ceremony. However, we believe that the actions of the parties, the circumstances under which they performed, their knowledge of their individual responsibilities and their intentions with regard thereto, as revealed by the testimony, taken together are sufficient "to characterize and evidence it as an oath. 20 RCL 508 § 4" (Atwood v State, supra), and to comply with the requirements of Article 30 of the Code.

We find the evidence in this case sufficient to establish that the charges were signed under oath. While it complied with the letter of the law,

the spirit in which the acts were performed left much to be desired.

An oath is "A solemn appeal to the Supreme Being in attestation of the truth of some statement. State v Jones, 28 Idaho 428, 154 P 378, 381; Tyler, Oaths 15." Black's Law Dictionary, 4th ed, page 1220. As such, the circumstances attending the taking of an oath should be such as to accord to the proceedings the solemnity appropriate thereto. The "customary procedure" described in paragraph 112d of the Manual is highly recommended to all concerned.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.