Raul J. SORIANO, U. S. Navy, Petitioner,

v.

Commander Edward W. HOSKEN, Jr. et al., U. S. Navy, Respondents.

No. 80–24.

U. S. Court of Military Appeals.

Sept. 22, 1980.

For Petitioner: *Lieutenant Commander Stephen C. Baker*, JAGC, USN (argued); *Lieutenant (J.G.) Janice L. Walli*, JAGC, USNR.

For Respondents: *Lieutenant J. G. Van Winkle*, JAGC, USN (argued); *Commander T. C. Watson, Jr.*, JAGC, USN, *Lieutenant Colonel D. A. Higley*, USMC (on brief).

*Opinion*

FLETCHER, Judge:

This is a petition for extraordinary relief filed by an accused facing special court-martial at the United States Naval Station, Subic Bay, Republic of the Philippines. *See* Rules 3(b)(1), 25 and 26, Rules of Practice and Procedure, United States Court of Military Appeals. The petitioner requests this Court to issue an order directing the respondent military judge to reverse his pretrial ruling that Attorney Dominador L. Soriano was not qualified to act as civilian counsel for the petitioner at this court-martial. *See* Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b). This petition for extraordinary relief is denied for the reasons stated below.

Under Article 38(b) a military accused has the important right to be represented at his special or general court-martial by civilian counsel provided at his own expense. *See United States v. Kinard*, 21 U.S.C.M.A. 300, 303, 45 C.M.R. 74, 77 (1972); *United States v. Nichols*, 8 U.S.C.M.A. 119, 23 C.M.R. 343 (1957). In order for this right to be meaningful as intended by the Code, this civilian counsel must be a qualified lawyer. *See United States v. Kraskouskas*, 9 U.S.C.M.A. 607, 609, 26 C.M.R. 387, 389 (1958); *see also* para. 48a, Manual for Courts-Martial, United States, 1969 (Revised edition). Such

a "qualified" attorney additionally must be "authorized by some recognized licensing authority to engage in the practice of law." *United States v. Kraskouskas, supra* at 609, 26 C.M.R. at 389. This Court has also indicated that "the Code imposes no [other] special qualifications upon a civilian attorney's right to practice before a court-martial." *Id.*

The terms "qualified" and "some recognized licensing authority," however, are words of limitation. In the context of the prohibition against any other "special qualifications," however, they were obviously intended by this Court to encompass only minimal restrictions on the military accused's right to counsel under Article 38(b). These requirements, nevertheless, have a particular codal underpinning. They were designed to fulfill the constitutional and codal vision that "[a] fair standard of professional competence . . . be a necessary condition precedent with the professional undertaking of the defense of a person" at a court-martial. *Id.* at 610, 26 C.M.R. at 390.[1]

■ In a decision prior to *Kraskouskas*, this Court noted that as a matter of practice a military accused had been free to choose his civilian counsel from members of the bar of every state in the United States and from the bar of the Federal courts without additional qualifications. *United States v. Nichols, supra.* This was an early and proper recognition by this Court that such lawyers are presumed competent for the professional undertaking of the defense of a military accused at a court-martial. *See* Article 27(b), UCMJ, 10 U.S.C. § 827(b). The Court in the above case also noted, but without comment, that "[i]n foreign countries he has even been represented by members of the local bar. *See United States v. Sears*, 6 U.S.C.M.A. 661, 20 C.M.R. 377." *United States v. Nichols, supra* at 125, 23 C.M.R. at 349. We believe this was an acknowledgment that a member of a local bar in a foreign country may be qualified to represent a military accused at a court-martial. His qualification, however, will depend on his ability to demonstrate "[a] fair standard of professional competence." *See United States v. Kraskouskas, supra; cf.* Quinn, *The United States Court of Military Appeals and Military Due Process*, 35 St. Johns L.Rev. 225, 235–36 n. 36 (1961).

■ Such an attorney who has not been admitted to practice before the highest court of a state of the United States, or is not a member of the bar of a Federal court must demonstrate that he possesses a requisite degree of appropriate training or familiarity with the general principles of law in operation at courts-martial in order to undertake the defense of a military accused on trial for a crime.[2] It is the military judge assigned[3] to the court-martial who must make the determination whether such a lawyer is minimally qualified to act as civilian counsel. Article 39(a), UCMJ, 10 U.S.C. § 839(a); *see Leis v. Flynt*, 439 U.S. 438, 442–44, 99 S.Ct. 698, 701–702, 58 L.Ed.2d 717 (1979). We do not anticipate that the military judge will establish any *per se* disqualification with respect to any recognized foreign bar or act on an individual basis in a niggardly fashion.

In light of the above, we find that the military judge had the authority to bar Attorney Soriano from acting as civilian counsel at petitioner's court-martial. Accordingly, the petition for extraordinary re-

---

1. *United States v. Kraskouskas*, 9 U.S.C.M.A. 607, 26 C.M.R. 387 (1958), specifically held that individually requested military counsel under Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b), must be a qualified lawyer. The rationale however, is equally applicable to the accused's right to individually secured civilian counsel provided in the same codal provision.

2. *United States v. Kraskouskas, supra* at 610, 26 C.M.R. at 390. *See In Re Griffiths*, 413 U.S. 717, 725–27, 93 S.Ct. 2851, 2856–57, 37 L.Ed.2d 910 (1973); *Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957); *see also Douglas v. Noble*, 261 U.S. 165, 169–70, 43 S.Ct. 303, 305, 67 L.Ed. 590 (1923).

3. *See* A.B.A. Standards, The Function of the Trial Judge, § 3.5 Commentary p. 46.

lief must be denied.[4] *See Dettinger v. United States*, 7 M.J. 216 (C.M.A.1979). We note that the partial record of trial and other exhibits have been attached to this petition for the purpose of our review of the propriety of the trial judge's decision under the particular facts of this case. Whether the military judge abused his discretion in this particular instance, is a matter for examination during the normal course of direct review of petitioner's case, if any.

EVERETT, Chief Judge (concurring):

In his exhaustive and scholarly dissent, Judge Cook points out that members of foreign bars have often appeared as defense counsel in courts-martial.[1] This circumstance implies that there is no *per se* rule of disqualification—and, therefore, that the unpublished opinion of the United States Navy Court of Military Review in *United States v. Mayreis*, N.C.M. 76 0820 (1976), to which the military judge was referred by trial counsel, was in error. On the other hand, it does not establish the existence of a *per se* rule that a foreign attorney must be allowed to represent an accused in an American court-martial.

While the Bar of the Philippines is highly regarded and has many common ties with the legal profession of this country, it is, nonetheless, a foreign bar. In my view, the right of a foreign attorney to appear in a court-martial is akin to the right of an attorney of one state to appear *pro hac vice* in the courts of another state. Simply being a lawyer, legally trained and admitted to practice law in one jurisdiction, does not automatically entitle one to appear in the courts of another jurisdiction. *United States v. Anderson*, 577 F.2d 258, 261 (5th Cir. 1978). Rather, an individual seeking to practice before any court must be admitted to practice in that court, either as a regular member of that court's bar or as one who appears specially for a given case.

There is an increasing willingness to allow such *pro hac vice* appearances, as the Supreme Court has recognized. *See Leis v. Flynt*, 439 U.S. 438, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). However, that Court rejected the claim that an absolute right exists to make such an appearance. *Id*. Instead, admission of such a counsel to represent a party is a matter in the trial court's sound discretion. And, consonant with the Sixth Amendment, a court, in exercising such discretion, can require appropriate training and familiarity with the laws of its jurisdiction as a precondition to admission to practice before it. *See In Re Griffiths*, 413 U.S. 717, 725, 93 S.Ct. 2851, 2856, 37 L.Ed.2d 910 (1973).

Accordingly, a military judge, in considering a request by a foreign attorney to be permitted to represent a service member being tried by court-martial, might wish to take into account such factors as: (a) the availability of the foreign attorney at times when court-martial sessions have been scheduled; (b) whether the accused proposes that the foreign civilian attorney appear in conjunction with military counsel; (c) familiarity of the attorney with English as spoken; (d) the practical alternatives for disciplining the attorney in the event of misconduct; (e) whether there would likely be foreign witnesses for the prosecution or the defense with whom the local attorney may be able to communicate more readily than could military defense counsel; and (f) similarity of ethnic or other background between the accused and the civilian attorney which might facilitate communication between the two, so that the accused feels more confident in the quality of the representation he will be receiving. Furthermore, even if the foreign attorney is allowed to appear, the military judge may

---

4. This holding does not preclude Attorney Soriano from presenting further matters to establish or demonstrate his particular qualifications so as to act as counsel in the present case.

1. Indeed, in my brief service on this Court, I have examined the records of several courts-martial in which accused persons were represented by one or more members of the Philippine Bar. *See, e. g., United States v. Vargas*, No. 38,841, *pet. denied*, 9 M.J. 122 (1980); *United States v. Sarile*, No. 39,093, *pet. denied*, 9 M.J. 519 (1980).

still wish to utilize special measures to assure that there is a fair and speedy trial—such as announcing at the outset that no continuance will be granted merely to accommodate the other commitments of the foreign attorney and declaring a mistrial if, at any time, actions of the civilian defense counsel threaten orderly court proceedings.

The allegations of the petition for extraordinary relief raised the real possibility that the military judge had applied a *per se* rule of disqualification. Therefore, considering the petition on its merits, rather than awaiting the outcome of the trial, was appropriate. However, examination of the record of the hearing conducted by the military judge convinces me that a *per se* disqualification was not being invoked by the military judge. Therefore, as it was within the judge's discretion to bar Attorney Soriano from the defense, I join in denying the petition.

The principal opinion authorizes Attorney Soriano to further develop the record with a view to inducing a favorable reconsideration in the military judge's discretion. It would, of course, be helpful for purposes of any later appellate review if the judge, in exercising his discretion, would specify on the record the factors he considered. However, I am persuaded that neither the Congress through Article 38(b) of the Code[2] nor the President through paragraph 48a of the Manual[3] intended to infringe upon the military judge's exercise of broad discretion to determine whether, and under what circumstances, a member of a foreign bar can practice in his court.[4]

2. Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b).

3. Para. 48a, Manual for Courts-Martial, United States, 1969 (Revised edition).

4. If we were of the view that a civilian foreign attorney could represent the accused as a matter of right, we would be confronted with the ironic situation that, while he could actively pursue his client's defense at trial, he would have no *right* to do so on appeal. Rule 8, Courts of Military Review Rules of Practice and Procedure, specifies that, as to qualifications of civilian counsel appearing in those courts, such "counsel shall be a member of the bar of a Federal court or of the highest court of a State,

COOK, Judge (dissenting):

In my opinion, the majority incorporate into military law a provincialism that is contrary to its worldwide application, contrary to the intention of Congress, and contrary to judicial application of the Uniform Code of Military Justice since its enactment in 1950. Before setting out the specifics of my disagreement with their result, I shall give my reasons for determining, in petitioner's favor, the preliminary question of his entitlement to challenge the trial judge's ruling by extraordinary proceeding instead of the normal process of appellate review.

## I

## THE COURT'S AUTHORITY TO GRANT EXTRAORDINARY RELIEF FROM DENIAL OF COUNSEL AT TRIAL

This Court's authority to grant extraordinary relief is not limitless. *McPhail v. United States*, 1 M.J. 457, 463 (C.M.A.1976); *see Barnett v. Persons*, 4 M.J. 934 (A.C.M.R. 1978). Whatever the limitations, however, extraordinary relief can be invoked to rectify a trial ruling that is not within the power of the judge or the court-martial.

While holding that an accused at a summary court-martial does not have a constitutional right to representation by counsel, the United States Supreme Court found "it unnecessary . . . to finally resolve" whether the Constitution affords the right to counsel at special and general courts-martial. *Middendorf v. Henry*, 425 U.S. 25,

and may be required to file a certificate setting forth such qualifications." 3 M.J. Rule 8a. Similarly, this Court's Rules of Practice and Procedure admonishes that "[n]o attorney shall practice before this Court unless the attorney has been admitted to the bar of this Court or is appearing *pro hac vice* by leave of Court." 4 M.J. Rule 11(a). The Rule goes on to prescribe that it is a prerequisite to be admitted "to the bar of this Court that" such attorney "be a member of the bar of a Federal court or of the highest court of a State, Territory, Commonwealth, or Possession, and that their private and professional character shall appear to be good." 4 M.J. Rule 11(b).

34, 96 S.Ct. 1281, 1287, 47 L.Ed.2d 556 (1976). However, as early as *United States v. Culp*,[1] a majority of the Court determined that the Sixth Amendment assured an accused the right to counsel at both general and special courts-martial. As recently as *United States v. Annis*, 5 M.J. 351, 353 (C.M.A.1978), Chief Judge Fletcher noted that the right to counsel in special and general courts-martial "is extended . . . both by the Sixth Amendment to the Constitution and the Uniform Code of Military Justice." What, then, is the effect at such a court-martial of a refusal to allow the accused's representation by a lawyer obtained by him free of expense to the Government?

In 1938, the Supreme Court held that denial of counsel to the defendant in a criminal case "stands as a jurisdictional bar to a valid conviction and sentence," and justifies issuance of a writ of *habeas corpus. Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1938). However, in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the Court recognized a constitutional right to collateral relief from a judgment of conviction of the ground of denial of counsel at trial without reference to denial as a "jurisdictional bar" to conviction. In historical perspective, the language in *Johnson v. Zerbst, supra*, appears as an expression of the then prevalent opinion that collateral relief from a conviction was obtainable only for a jurisdictional defect in the trial proceedings.

Our own cases indicate that, while denial of counsel may invalidate a conviction, counsel is not "an integral part of the adjudicating tribunal" and "the error . . . is not of jurisdictional magnitude." *Wright v. United States*, 2 M.J. 9, 10 (C.M.A.1976). In *United States v. Vanderpool*, 4 U.S.C. M.A. 561, 566, 16 C.M.R. 135, 140 (1954), the Court held that an erroneous determination that individual military counsel requested by the accused was unavailable did *not* "vitiate the jurisdiction of a court-martial."

In *United States v. Batts*, 3 M.J. 440, 441 (C.M.A.1977), the Court assumed, for the purpose of disposition of accused's appeal, that his civilian lawyer, a member of the Bar of the Republic of the Philippines, was disqualified to represent him at his trial by court-martial, but it held that accused's representation by a disqualified individual was not "jurisdictional" error. *Cf.* the nature of the relief granted in *United States v. Kraskouskas*, 9 U.S.C.M.A. 607, 26 C.M.R. 387 (1958), where the Court held that accused was, in fact, represented by a disqualified person.

If, like the majority, I perceived the issue presented by petitioner as only a review of a discretionary ruling on a matter legally within the power of the trial judge *qua* judge or a court-martial to decide, I would hold that the ruling cannot be challenged by a proceeding for extraordinary relief. *Dettinger v. United States*, 7 M.J. 216 (C.M. A.1979); *Wright v. United States, supra*. However, I see the issue as a challenge to usurpation of authority by a trial judge as regards accused's right to representation by a civilian lawyer who is a member of the bar of the country in which the court-martial is convened.

In his respected text on military law under the Uniform Code, James Snedeker points out, correctly I believe, that a court-martial has no "bar" to which it can admit lawyers for practice before it. Snedeker, *Military Justice Under the Uniform Code* § 607f(4) (1953). A court-martial is not a permanent tribunal; it may be created for, and exist only until, a single case is tried and reviewed.

Nothing in the Uniform Code or the Manual for Courts-Martial empowers a particular court-martial, or a judge thereof, to prescribe qualifications for practice before it. Nor does either allow a court-martial, or the judge detailed to it, to require a person appearing as counsel to submit to examination as to his knowledge of applicable law and practice and to condition counsel's right to act upon whether the court or the judge

---

1. 14 U.S.C.M.A. 199, 217, 33 C.M.R. 411, 429 (1963) (Quinn, C. J., concurring in the result);    *id.* at 219, 33 C.M.R. at 431 (Ferguson, J., concurring in the result).

is satisfied that counsel is competent. The 1951 Manual for Courts-Martial, which was promulgated when the Uniform Code came into effect, provided, and the current 1969 Manual provides, for establishment of rules by the Judge Advocate General of an armed force for suspension of the right to practice of a person authorized to do so by the Uniform Code. Paragraph 43, Manual for Courts-Martial, United States, 1969 (Revised edition); para. 43, Manual for Courts-Martial, United States, 1951.[2] Suspension cannot be effected without "notice and opportunity to be heard," and by no one "except . . . the Judge Advocate General of the armed force concerned." *Id.* In *United States v. Nichols*, 8 U.S.C.M.A. 119, 125, 23 C.M.R. 343, 349 (1957), the Court referred to this provision, and indicated that it apparently placed "the burden . . [upon] the Government to prove that civilian counsel is disqualified, rather than upon counsel to establish his qualification," aside from his membership in a civilian bar.

As I see the issue, it is whether a trial judge of a court-martial has the power to disqualify a member in good standing of the Bar of the Republic of the Philippines from representing the accused at a court-martial convened in that country. If the judge lacks that power, his exclusion of counsel was not merely a mistake in judgment, but a void act. Review of such a ruling is a proper subject of an application for extraordinary relief.

Remaining for consideration is whether the proceeding was properly initiated in this Court. The authority of a Court of Military Review to grant extraordinary relief is now well-settled. *Dettinger v. United States, supra.* Consequently, an application for such relief should be presented first to the Court of Military Review. *See Kelly v. United States*, 23 U.S.C.M.A. 567, 568, 50 C.M.R. 786, 787 (1975); Moyer, *Justice and the Military*, § 2–842 (1972). As the petition has been before us for a considerable period and the matter is of substantial importance to the administration of military justice in foreign countries, I am impelled to expound my reasons for reaching a result opposite to the majority.

## II

## THE RIGHT OF AN ACCUSED TO REPRESENTATION BY COUNSEL ADMITTED ONLY TO THE BAR OF THE FOREIGN COUNTRY IN WHICH THE COURT–MARTIAL IS CONVENED

I first considered an accused's right to be represented by a civilian attorney who was not a member of a bar of an American jurisdiction in an individual capacity writing for a professional journal. My comment was that this Court's "opinions still support the conclusion that a foreign lawyer may appear for an accused *as of right*."[3] When similarly confronted with an earlier writing as a lawyer, Mr. Justice Jackson of the United States Supreme Court said that he did "not regard it as a precedent," and the writing would not "bind [his] present judicial judgment." *Youngstown Sheet & Tube Co. v. Sawyer,*

2. The respective texts of paragraph 43 of the 1951 and 1969 Manuals for Courts-Martial are somewhat different, but the substance is the same. The 1969 Manual provision reads as follows:

*SUSPENSION OF COUNSEL.* Rules defining professional or personal misconduct, or other reasonable grounds, which disqualify a person, either temporarily or indefinitely, from acting as counsel before courts-martial may be announced by the Judge Advocates General of the armed forces in appropriate regulations. These regulations shall provide for notice and opportunity to be heard and will also establish procedures to provide for the suspension of persons from acting as counsel before courts-martial. Appropriate action may be taken by a convening authority, in accordance with the regulations, to recommend suspension of the person affected from practice as counsel before courts-martial of the armed force concerned. Suspension will not be effected except by the Judge Advocate General of the armed force concerned. The Judge Advocate General concerned may, upon good cause shown, modify or revoke a prior order of suspension.

3. Cook, *Courts-Martial: The Third System in American Criminal Law*, So.Ill.L.J. 1, 7 (1978) (footnote omitted) (emphasis added).

343 U.S. 579, 649 n. 17, 72 S.Ct. 863, 877 n. 17, 96 L.Ed. 1153 (1952). I have the same resolve.

My reading of the transcript of the proceedings convinces me that the trial judge refused to allow Dominador Soriano, Esquire, a member of the Integrated Bar of the Republic of the Philippines and the accused's father, to represent the accused only because he was not admitted to the bar of an American jurisdiction.

Two articles of the Uniform Code expressly refer to "civilian counsel," but the term is not defined in Article 1, UCMJ, 10 U.S.C. § 801, the definition article. Article 32(b), UCMJ, 10 U.S.C. § 832(b), assures an accused the right to "be represented by civilian counsel if provided by him" at the formal investigation required by the article for charges intended for trial by general court-martial; and, Article 38(b), UCMJ, 10 U.S.C. § 838(b), prescribes that an "accused has the right to be represented in his defense before a general or special court-martial by civilian counsel if provided by him." Until today's decision by the majority, this Court, and every student of military law who considered the matter, construed the term "civilian counsel" to include a member of a bar of a foreign nation. Presently, I shall set out some of the public declarations; suffice it for the moment to observe that the first Chief Judge of the Court, the Honorable Robert E. Quinn, reflecting on the fact that the Uniform Code operates worldwide, said that "the accused's freedom to choose counsel from among the bar of a foreign country in which he is stationed is a valuable right." Quinn, *The United States Court of Military Appeals and Military Due Process*, 35 St. John's L.Rev. 225, 235 n. 36 (1961). I am not at all sure that the right can be constitutionally circumscribed as the majority now provide.

### A. *Constitutional Uncertainties in the Majority's Rule*

Chief Judge Quinn perceived that the "liberality of choice" of civilian counsel in a foreign country "pose[d] a problem in a"

case in which "disclosure of classified material" would be required. *Id.* at 236. Observing that civilian counsel could not "[o]rdinarily" be barred from a court-martial because he "does not have a security clearance," [4] Chief Judge Quinn suggested that selection of counsel from a country "'behind the Iron Curtain'" might justify exclusion. *Id.* Security aside, as it is here, several constitutional objections appear to the conditioning of the foreign attorney's right to represent the accused upon establishment, to the judge's satisfaction, that he, as the majority put it, "possesses a requisite degree of appropriate training or familiarity with the general principles of law in operation at courts-martial." 9 M.J. at 222. To avoid the implicit discrimination of their ruling, the majority assume that an American jurisdiction lawyer has such training or familiarity, whereas a member of a foreign bar does not. Reality negates assumption. *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). The Chief Justice of the United States has declared several times that the performance of defense counsel in about 50 percent of the criminal cases that come before the Supreme Court "is deplorable." Cook, *Courts-Martial: The Third System in American Criminal Law*, So.Ill.L.J. 1, 11 (1978) [hereinafter cited as Cook]. In *Wainwright v. Sykes*, 433 U.S. 72, 99, 114, 97 S.Ct. 2497, 2521, 53 L.Ed.2d 594 (1977), Mr. Justice Brennan, in a dissent joined by Mr. Justice Marshall, said:

> [P]racticing lawyers too often are ill-prepared or ill-equipped to act carefully and knowledgeably when faced with decisions governed by state procedural requirements.

If American civilian lawyers are so ill-prepared as regards the "general principles of [civilian] law," can they reasonably be expected to be better informed as to the "general principles of [military] law"? Without their assumption, which I believe cannot stand up in the real world, the rule posited by the majority is constitutionally suspect. Imposition of conditions on accused's right

---

**4.** *See United States v. Nichols*, 8 U.S.C.M.A. 119, 23 C.M.R. 343 (1957).

to representation by a member of a foreign bar in a foreign country invites examination of the constitutional right to counsel as applied to an American criminal proceeding in a foreign country. In *United States v. Rayas*, 6 U.S.C.M.A. 479, 483, 20 C.M.R. 195, 199 (1955), the Court noted the frequency "in the overseas military juristic scene" of the use of "language-hampered witness[es]" and the practical problems generated by that circumstance. *See also United States v. Talavera*, 8 M.J. 14 (C.M.A.1979); *United States v. Henderson*, 1 M.J. 421, 427 (Fletcher, C. J., dissenting).

Time and again, this Court, as every other American court, has emphasized that a lawyer is not just for the courtroom. In *United States v. Long*, 5 U.S.C.M.A. 572, 576, 18 C.M.R. 196, 200 (1955), the Court said: "Much of the value of a counselor is wrapped up in his pretrial preparations and decisions." *See Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The majority's rule apparently applies only to the "undertaking of the defense of a . . . [person] at a court-martial," 9 M.J. at 222, that is, at the trial. Presumably then, a member of the bar of the country in which the court-martial charges originate can represent an accused at all stages of the proceedings before trial and at all stages of review after trial, at the command level. So, he can represent an accused at a "custodial interrogation" at which accused has the right to the presence of counsel of his own selection; at a formal Article 32 investigation, at which accused is entitled to representation by "civilian counsel"; in regard to all necessary preliminary motions that must be addressed to the convening authority because the charges have not yet been referred to trial [5]; and after trial, civilian counsel can again represent the accused before the convening authority in connection with his action on the findings of guilty and the sentence. *See* Article 38(c), UCMJ, 10 U.S.C. § 838(c); *United States v. Brownd*, 6 M.J. 338 (C.M.A.1979) (application for deferral of confinement, Article 57(d), UCMJ, 10 U.S.C. § 857(d)); *United States v. Bingham*, 3 M.J. 119 (C.M.A.1977) (vacation of suspension of sentence, Article 72, UCMJ, 10 U.S.C. § 872); *United States v. Goode*, 1 M.J. 3 (C.M.A.1975) (rebuttal of staff judge advocate's post-trial review to convening authority, Article 61, UCMJ, 10 U.S.C. § 861). I am not at all sure that the Constitution sanctions such forced truncation of a lawyer's representation of his client.

The majority's rule also generates special problems for enlisted accused. The Court has observed that "[t]he vast majority of . . . [enlisted accused] are without personal resources with which to employ . . . skillful and experienced lawyers from the civilian community." *United States v. Palenius*, 2 M.J. 86, 92 (C.M.A.1977). What are the odds that an enlisted accused can induce an American lawyer to hazard his life in a dangerous area in a foreign country [6] for the kind of fee the accused can afford? I believe the chance of success is so small for so many that the majority's rule, ineluctably, diminishes accused's ability to retain civilian counsel for a court-martial proceeding in a foreign country. The Supreme Court has cautioned that "[w]hat were contrived as protections for the accused should not be turned into fetters." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).

While my reservations as to the constitutionality of the majority's rule are strong, I need not submit them to the analysis and research required for decision. I am satisfied that the rule is contrary to the Uniform Code and well-established military practice.

---

5. *Porter v. Richardson*, 23 U.S.C.M.A. 704, 706 (1975) (Cook, J., dissenting).

6. *Cf. United States v. Hodge*, 20 U.S.C.M.A. 412, 413, 43 C.M.R. 252, 253 (1971). Other kinds of problems encountered by an accused desiring representation by a civilian lawyer in a court-martial convened in a foreign country appear in *United States v. Timberlake*, 22 U.S.C.M.A. 117, 46 C.M.R. 117 (1973) (Vietnam); *United States v. Kinard*, 21 U.S.C.M.A. 300, 45 C.M.R. 74 (1972) (Vietnam); *United States v. Borzellino*, 9 C.M.R. 304 (A.B.R.1953) (Germany).

## B. *My View of the Right to Civilian Counsel*

Articles 27(b), UCMJ, 10 U.S.C. § 827(b), and 38(b), *supra*, plainly indicate that Congress knew how to prescribe qualifications for counsel other than membership in a specified bar. It mandated that detailed defense counsel be both "a member of the bar" and "certified" by the Judge Advocate General of his service. As for civilian counsel, Congress required only that he be a lawyer and represent the accused without expense to the Government. *United States v. Kraskouskas, supra* at 609, 26 C.M.R. at 389. The different requirements evolved to meet two concerns: One is manifested in discussions incident to the development of the Uniform Code that probed deficiencies and abuses in courts-martial practice during World War II; the other is implicit in the fact that the Code accompanies the armed forces in foreign countries. To the public and the legal profession, one of the most opprobrious of the wartime practices was the commanders' invidious control over defense counsel, who often were nonlawyers.[7] Both the draftsmen of the Code and witnesses at the congressional hearings on the Code perceived that a qualified lawyer and the requirement of his certification by the Judge Advocate General would reduce the possibilities of command control to near zero. As to civilian counsel, he is a lawyer, not a nonlawyer; and, as a civilian, he is not likely to be subject to the influence of a venal commander. It is not surprising, therefore, that Congress prescribed no qualifications but that he be a lawyer. I believe that Congress took for granted what, a few years later, the Air Force Board of Review [now Court of Military Review] held:

> [A] civilian attorney who is qualified to practice under the requirements of the particular jurisdiction to which he is accredited . . . can be equated to certified military counsel.

*United States v. Gudobba,* 20 C.M.R. 864, 868 (A.F.B.R.1955) (footnote omitted).

I have read the Minutes of the Working Group,[8] the transcript of the congressional committee hearings on the Elston Act,[9] which made changes in the Articles of War with respect to defense counsel that were incorporated into the Uniform Code, and the record of the congressional committee hearings on the Uniform Code.[10] I found no statement or memorandum which indicated, directly or indirectly, that a member of a foreign bar should be treated differently from a member of an American bar. I believe the idea that foreign counsel must, or should, be treated differently never entered the minds of the draftsmen of the Code and the members of Congress. If that

---

7. *See United States v. Kraskouskas,* 9 U.S.C. M.A. 607, 26 C.M.R. 387 (1958); *United States v. Bartholomew,* 1 U.S.C.M.A. 307, 3 C.M.R. 41 (1952). In his opinion in *United States v. Whipple,* 4 M.J. 773, 781, 783 (C.G.C.M.R. 1978), Judge Lynch succinctly summarized the congressional concerns in two footnotes, as follows:

1. It is interesting to note that during the hearing on the proposed UCMJ, the only concern expressed with respect to Article 27 was that the defense counsel required to be detailed by a convening authority should be a qualified lawyer. *Hearing Before House Armed Services Committee on H.R. 2498, 81st Cong., 1st Sess.* pp. 789, 1155–56, 1164–69. See also, *Hearings Before Senate Armed Services Committee on S. 857 and H.R. 4080, 81st Cong., 1st Sess.* pp. 184, 257–58, and 319.

2. The major concern expressed with respect to Article 38(b) during the hearings on the proposed U.C.M.J. appears to be limited to the words "if reasonably available." Because of the fear of command control in selecting a defense counsel for detailing pursuant to Article 27, the argument was that the command should not also control the availability of the individually selected counsel when requested pursuant to Article 38(b). It was urged that the "if reasonably available" language be eliminated. *See, e.g., Hearings Before House Armed Services Committee on H.R. 2498, 81st Cong., 1st Sess.* at 684.

8. Committee on a Uniform Code of Military Justice, Office of the Secretary of the Defense, July 30 to November 3, 1948.

9. *Hearings Before a Subcommittee of the House Armed Services Committee on H.R. 2575, 80th Cong., 1st Sess.* (1947).

10. Index and Legislative History, Uniform Code of Military Justice, *Hearings Before a Subcommittee of the House Armed Services Committee on H.R. 2498, 81st Cong., 1st Sess.* (1949).

idea had been suggested, they would probably have been appalled. Then, as now, American forces in large numbers were stationed in many countries in Europe and the Far East, and the likelihood was that many courts-martial would be convened in those countries. To impose restraints on an accused's selection of a civilian lawyer from the local bar in effect would be taking from him in practice what ostensibly had been given to him by law.

(1) The effect of civilian counsel's probable conduct at trial on accused's right to his services as counsel of his choice

A judge has authority to control the conduct of a trial. He can curb disruptive or contemptuous conduct by a lawyer. Article 48, UCMJ, 10 U.S.C. § 848, expressly empowers a court-martial to punish "any person" for contemptuous, menacing, or disruptive conduct. In *United States v. Walters*, 4 U.S.C.M.A. 617, 631 n. 4, 16 C.M.R. 191, 205 n. 4 (1954), the Court perceived the article to apply to an attorney. As the Constitution does not prohibit forced removal from the courtroom of a contemptuous and disruptive defendant, I suppose that, constitutionally, a judge can order from the courtroom a contemptuous and disruptive lawyer. *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970).

Provisions of the 1969 Manual for Courts-Martial relating to misconduct by counsel at trial authorize a court to "report . . . the facts . . . at once to the convening authority" for "appropriate action" by him. Paras. 44*b* and 46*b*, Manual, *supra*.[11] Presently, I shall refer to the text of these provisions; for now, I note that, in the course of the hearing on Attorney Soriano's qualifications to represent the accused, the trial judge asked the military attorneys whether a civilian counsel could be held "in contempt of court and sentence[d] . . . to jail." Trial counsel hastened to disclaim

any purpose "to accuse" Mr. Soriano of "any wrongdoing"; he said he "merely" alluded to misconduct on the part of a foreign attorney "as a possibility . . . not only in this court, but in future courts." The trial judge made no finding that Mr. Soriano had been disruptive at any previous court-martial or that he anticipated Mr. Soriano would be disruptive at petitioner's trial. Assuming, without deciding, and, in fact doubting, that the right to punish a lawyer for past misconduct includes the right to close the courtroom door to him because of anticipated misconduct, the judge had no evidence before him to indicate that Mr. Soriano had ever been disruptive in, or contemptuous of, any court, or that there was any reasonable likelihood to expect that he would be in these proceedings. Mr. Soriano's past conduct and probable future conduct, therefore, provided no justification for the trial judge's ruling.

(2) The constitutional requirement that counsel provide effective assistance as authority to prohibit a lawyer selected by the accused from representing him at trial

The Constitution requires that a lawyer representing an accused provide effective assistance. *Powell v. Alabama, supra.* The obligation is not only imposed upon counsel provided for the accused by the Government but also burdens the lawyer the accused selects to represent him. Assuredly, therefore, if a trial judge wants to avoid a declaration of a mistrial, on his own initiative or by an appellate tribunal, he must be alert to, and guard against, egregious incompetence by defense counsel. For due process reasons, he similarly must be alert to incompetence on the part of government counsel that might deprive the accused of his constitutional right to a fair trial or deny him other constitutional protections. I am not aware of any authority, on the part of a judge in an American civilian

---

11. While I have compared procedures in a civilian court with those in a court-martial, I acknowledge that, in the civilian community, a limitation of the kind presented by the Manual might raise a serious question because of the separation of powers between the Judicial and Executive Branches of the Government.

court, to examine counsel at the outset of trial to determine his general knowledge of the law or to prohibit him from acting at the trial, if the judge is not personally satisfied that counsel has the knowledge and the degree of competence he deems essential for a trial lawyer. Even if such authority does exist in an American court, it is expressly disallowed to a court-martial or a military judge by military law.

Article 36(a), UCMJ, 10 U.S.C. § 836(a), empowers the President to prescribe "procedure . . . before courts-martial . . which may not be contrary to or inconsistent with" the Uniform Code. I have construed the article more expansively than the majority of the Court as previously constituted. *See United States v. Newcomb*, 5 M.J. 4, 7 (C.M.A.1978) (Cook, J., concurring). However, the Manual provisions as to what can be done when a trial judge believes that counsel is unqualified or incompetent to act concern procedures at trial. Consequently, even under the most restrictive view of Article 36, the Manual provisions are within the President's authority, and are the law, unless contrary to, or inconsistent with, the Constitution or the Uniform Code.

As to the Constitution, I do not construe its assurance of effective assistance of counsel as investing a trial judge with authority to subject a lawyer who is already admitted to practice before the court, as an institution, to an examination as to his knowledge of the law. In footnote 11, *supra*, I indicated that the constitutional concept of the separation of powers complicates the delineation of qualifications for practice in a court, but I have no doubt that a military judge of a particular court-martial has no inherent constitutional authority to bar a lawyer from representing his client because he, personally, believes the lawyer is lacking in legal knowledge or is otherwise incompetent to represent the accused.

As to the Uniform Code, a military judge is empowered to rule on "interlocutory questions." Article 51(b), UCMJ, 10 U.S.C. § 851(b). That authority permits declaration of a mistrial for an egregious error on the part of accused's counsel, or to correct an error by counsel that can be corrected without residual risk of harm to the accused. In my opinion, the right to remedy misconduct by counsel does not include the right to prohibit counsel from acting for the accused. In my view, therefore, neither the Constitution nor the Code prohibits the President from prescribing the procedure for barring counsel selected by an accused from representing him in court-martial proceedings.

Let us turn to the Manual provisions. Paragraph 44*b* provides, in pertinent part, that if "it appears to the court . . . that any member of the prosecution . . is for any reason, including . . . lack of legal qualifications . . . disqualified or unable properly and promptly to perform his duties," the court will "report . . . the facts . . . at once to the convening authority and appropriate action [will be] taken to insure that the disqualified member shall not act for the prosecution." With respect to defense counsel, paragraph 46*b* provides that:

> A report of facts will be made at once to the convening authority for his appropriate action when it appears . . . that any member of the defense named in the convening order is for any reason, including . . . lack of legal qualifications . . . unable properly and promptly to perform his duties in any case.

No provision of the Manual specifically requires a court-martial or trial judge to report perceived incompetence on the part of civilian counsel. However, paragraph 43, which deals with suspension of counsel, supports an inference that the Manual contemplates such action in an appropriate case. Paragraph 43 provides that "a convening authority" may "recommend suspension" of a person who for "misconduct, or other reasonable grounds, . . . [should be] either temporarily or indefinitely . . . [suspended] from acting as counsel before courts-martial." These several provisions impel the conclusion that a court-martial cannot, on its own, suspend a lawyer who is

a member of a recognized bar from representing an accused at the trial of his case.

C. *Previous interpretations of accused's right to be represented by civilian counsel who is a member of a bar of a foreign country in which the court-martial is convened*

The majority cite the opinion in *United States v. Kraskouskas, supra,* as the central source of law justifying the judge's exclusion of Attorney Soriano. Not a word in that opinion, however, suggests that accused's right to be represented by a member of the bar of a friendly foreign country is less than his right to be represented by a member of an American bar. The only pertinent reference to accused's right to select civilian counsel is that the person "so provided [by the accused] must be a lawyer who is a member in good standing of a recognized bar." *Id.* at 609, 26 C.M.R. at 389. Before *Kraskouskas,* this Court approved cases in which the only referenced qualification of accused's counsel was that he was a member of the bar of the country in which the court-martial was convened. In *United States v. Sears,* 6 U.S.C.M.A. 661, 20 C.M.R. 377 (1956), the Court set aside accused's conviction because of gross irregularities in the trial proceedings, but it perceived no irregularity in accused's representation by a local solicitor of Wales, United Kingdom.[12] Only a month before publication of the *Kraskouskas* opinion, the Court decided *United States v. Harris,* 9 U.S.C. M.A. 493, 26 C.M.R. 273 (1958). There, too, trial was held in the United Kingdom, and the accused had been represented by a solicitor. The point of my reference to these cases is that the Court has implicitly acknowledged that, under the present provisions of the Uniform Code and Manual for Courts-Martial, an accused's choice of a civilian lawyer cannot be frustrated by requiring counsel to pass an impromptu and unstandardized test as to his knowledge of American law generally and military law in particular. In *United States v. Nichols, supra* at 125, 23 C.M.R. at 349, the Court said:

> We presume that Congress could require civilian counsel to meet certain qualifications before being authorized to practice before courts-martial. However, no explicit qualifications have been prescribed. Accordingly, in practice, the accused has been free to choose his counsel from the members of the bar of every state in the United States, and from the bar of the Federal courts. In foreign countries he has even been represented by members of the local bar. See *United States v. Sears,* 6 U.S.C.M.A. 661, 20 C.M.R. 377. Recognizing the problems that such an unrestricted choice can present in the preliminary stages of a security case, one student of military law has suggested that, after a hearing on the question, civilian counsel can be barred from court-martial practice on the ground that he is a security risk. Feld, A Manual of Courts-Martial Practice and Appeal, § 158(b) (1957). Assuming the validity of such proceedings, it would appear that the burden is on the Government to prove that civilian counsel is disqualified, rather than upon counsel to establish his qualification. See Manual for Courts-Martial . . . [1951], paragraph 32, page 61. We think this is the correct rule. Since the accused's civilian counsel had not been barred from practice before courts-martial, it was error to exclude him from the pretrial investigation.

Let us look briefly at what some others have said about the accused's right to foreign counsel. Speaking from the vantage point of close association with the Working Group of the Committee charged by Secretary of Defense Forrestal to draft the Uniform Code, to which he had submitted a number of position papers while on active

---

12. Contemporaneously, the Court sustained the conviction by a court-martial at which the accused had been represented by a civilian counsel whose bar membership was not identified, but who had, as an "associate," a Dr. Ohta, who, apparently, was a Japanese lawyer. *United States v. Rayas,* 6 U.S.C.M.A. 479, 20 C.M.R. 195 (1955).

duty in the Marine Corps, James Snedeker wrote in his respected text, *Military Justice Under the Uniform Code* § 607f(4) (1953), as follows:

Any requirement of qualification which would have the effect of reducing the size of the personnel pool from which the accused might choose his counsel has been carefully avoided.

One of the leading current texts on military practice, Moyer, *Justice and the Military* § 2–316 (1972), comments as follows:

An accused is entitled to be represented by individual civilian counsel of his choice if retained by him at no expense to the government. Art. 38(b), U.C.M.J.; para. 48a, MCM, 1969 (Rev.). Civilian counsel must be either qualified under article 27(b), U.C.M.J., or "otherwise qualified as a lawyer . . ." Para. 48a, MCM, 1969 (Rev.). Military courts have construed this to include all members in good standing of a recognized bar, state, federal, or foreign. *United States v. Kraskouskas*, 9 U.S.C.M.A. 607, 26 C.M.R. 387 (1958); *United States v. Aau*, 12 U.S.C.M.A. 332, 30 C.M.R. 332 (1961); *United States v. Sears*, 6 U.S.C.M.A. 661, 20 C.M.R. 377 (1956); . . . Quinn, *The United States Court of Military Appeals and Military Due Process*, 35 St. John's L.Rev. 225, 235–36 (1961) (accused has right to foreign lawyer except in cases arising behind Iron Curtain).

U.S.C.M.A. has generally rebuffed attempts to impose further requirements upon civilian counsel, such as that he obtain a security clearance to handle classified materials. *United States v. Nichols*, 8 U.S.C.M.A. 119, 23 C.M.R. 343 (1957) (concurring opinion).

Citing *Kraskouskas*, an Air Force Board of Review held that a member of the Bar of the Republic of the Philippines could properly represent an accused at trial because "[t]he only qualification required of individually selected civilian counsel to practice before courts-martial is membership in good standing of a 'recognized' bar"; it went on to hold that the Bar of the Republic of the Philippines was a recognized bar. *United States v. George and Koepke*, 35 C.M.R. 801, 806 (A.F.B.R.1965). This Court affirmed after only granting review to consider the validity of trial on unsworn charges, but the Court's opinion makes no mention of the qualification of defense counsel, notwithstanding its concern in *Kraskouskas* that an accused be represented only by a qualified lawyer. 15 U.S.C.M.A. 542, 36 C.M.R. 40 (1965). Similarly, in *United States v. Easter*, 40 C.M.R. 731, 734 (A.B.R.1969), *aff'd. on other grounds*, 19 U.S.C.M.A. 68, 41 C.M.R. 68 (1969), the Army Board of Review (now Court of Military Review) held that a member of the bar of the Federal Republic of Germany was a member of a "recognized bar" and, therefore, qualified to represent the accused at a court-martial. *See United States v. Moore*, 4 C.M.R. 586 (A.F.B.R.1952), where the accused was represented by a Japanese lawyer.

The draftsmen of the 1969 Manual for Courts-Martial incorporated into the Manual the principles it believed the Court had propounded in *United States v. Kraskouskas, supra*, and *United States v. Davis*, 9 U.S.C.M.A. 614, 26 C.M.R. 394 (1958). Paragraph 48a of the 1951 Manual for Courts-Martial had provided merely that an accused had the right to be represented "by civilian counsel if provided by him" without expense to the Government. The 1969 Manual added to paragraph 48a the following pertinent part:

Only a person qualified under Article 27(b) *or otherwise qualified as a lawyer* may act as individual counsel or represent an accused before a general court-martial or a special court-martial at which a bad conduct discharge may be adjudged. Even at his own insistence after full advice an accused may not be represented by a person who does not fall within one of these categories. An accused may, if he desires, conduct his own defense without assistance of counsel. In such a case,

the military judge or the president of a special court-martial without a military judge (15b), shall advise him of his right to be represented by qualified counsel. [Emphasis supplied.]

As had the draftsmen of the Uniform Code, the draftsmen of the 1969 Manual "carefully avoided" diminution of the pool of civilian attorneys available to an accused in a foreign country. They expressly disclaimed any purpose to restrict accused's right to counsel further than the limits they discerned in the *Kraskouskas* opinion. They said:

> *Right of accused to counsel of his own choice.* Changed to conform to Art. 38(b) with regard to excusal of detailed counsel by the MJ or president of an SPCM without MJ.

> A new second paragraph provides that only a person qualified under Art. 27(b) or otherwise qualified as a lawyer may act as counsel for the accused before a GCM, unless the accused after proper advice elects to defend himself. *United States v. Davis, supra; United States v. Kraskouskas, supra.*

> Since the Act requires defense counsel detailed to BCD SPCM to be lawyers, the manual requires individual counsel also be lawyers. This incorporates the principle of *Kraskouskas* that individual counsel must have the same qualifications as those required for detailed counsel. This position is reinforced by the sentiments expressed by C. J. Quinn in his concurring opinion in *United States v. Culp*, 14 U.S. C.M.A. 199, 218, 33 C.M.R. 411, 430.

> *Broad language was intentionally used in this paragraph so as to permit foreign lawyers to act as individual counsel before courts-martial.* *United States v. Nichols*, 8 U.S.C.M.A. 119, 125, 23 C.M.R. 343, 349 (1957).

Department of the Army Pamphlet No. 27–2, Analysis of Contents, Manual for Courts-Martial, United States, 1969 (Revised edition) (July 1970), para. 48a (emphasis added).

Two cases remain for consideration. One is *United States v. Mayreis*, N.C.M. 76–0820 (unpublished) (N.C.M.R. October 29, 1976), which was cited by trial counsel in his argument in the proceedings below, and *United States v. Batts, supra*, which I considered in connection with the preliminary question whether the petition for extraordinary relief is properly before us. In *Mayreis*, the accused was represented by a civilian member of the Bar of the Republic of the Philippines. For prejudicial error in denying the accused the right to detailed military counsel, the Court of Military Review set aside the findings of guilty and the sentence. In a dictum perceived to be "appropriate," the court referred to paragraph 48a of the Manual and said:

> We do not believe that the drafters of the Manual intended the phrase "or otherwise qualified as a lawyer" to include foreign lawyers.[1] American lawyers are

[1] *Contra—United States v. Crocker*, 35 C.M.R. 725 (A.F.B.R.1964); *United States v. George*, 35 C.M.R. 801 (A.F.B.R.1965). We reject the reasoning of these cases which held that an attorney admitted to practice in the Republic of the Philippines but not a member of the bar of a Federal Court or of the highest court of a state or possession of the United States was qualified to act as individual defense counsel at a general court-martial but was not qualified to represent the accused on appeal before an Air Force Board of Review. The logic of such a holding is difficult to discern and we specifically reject any general notion that a counsel can be qualified to defend an accused at the trial level but be unqualified to champion the accused's cause on appeal in the event of conviction. *Compare United States v. Batts*, No. 74 2467 (N.C.M.R. 28 June 1976).

> generally not permitted to appear alone in foreign courts. Most state and territorial courts do not admit foreign attorneys to practice *pro hac vice*, especially if they do not associate a local attorney, moreover, the American Military courts do not have the power to discipline foreign lawyers for misconduct before courts-martial. These factors indicate that foreign attorneys are not "otherwise qualified" to practice before courts-martial. This does not mean that they cannot appear at such courts in accordance with the principles

set out in *United States v. Kraskouskas, supra.* It means that in the absence of a conscious, knowing, informed, and voluntary waiver by an accused, he must, at a general court-martial or special court-martial which can adjudge a bad conduct discharge, be represented by a "qualified" lawyer.

*United States v. Mayreis, supra* at 16–17.

I have already noted that, contrary to the belief of the Court of Military Review in *Mayreis,* a foreign attorney representing an accused at a court-martial is accountable for misconduct before the court. 9 M.J. at 229–230. Further, whatever the practice as to an American attorney's right to appear alone for a party in a foreign court, or the attitude of American courts as to a foreign attorney's representation of a party in an American court, Congress has sanctioned, and the majority now approve, representation of an accused at a court-martial by foreign counsel selected by him. Although the trial judge below did not refer to *Mayreis* in his ruling, his inquiry into whether Attorney Soriano could be subject to punishment for contempt of court supports an inference that he was influenced by the dictum. On this ground alone, I believe the judge's ruling should not be allowed to stand.

In *Batts,* the accused had obtained a change of venue from Okinawa to Subic Bay, Republic of the Philippines, so that he could be represented by a Philippine lawyer he had selected. He was convicted, and his conviction was approved by the convening authority and the Navy Court of Military Review. On appeal to this Court, the accused contended that, because "his Philippine lawyer was not . . . a member of an American Bar and was not certified as a lawyer by the Judge Advocate General of the United States Navy," (3 M.J. at 441) (footnotes omitted), she was not qualified to represent him at trial. The Court elected not to pass on the accused's allegation. I joined in the *Batts* opinion not anticipating that the Court's abstention would be con-

strued as casting doubt upon the *per se* qualification of a member of the bar of a foreign nation to represent an accused at a court-martial convened in that country. *See* Cook, *supra* at 7. It seems to me that the majority's rule now lays that doubt to rest. The majority's rule implicitly acknowledges that the Philippine Bar is a recognized bar, within the intendment of *United States v. Kraskouskas, supra.*

## III

### THE MERITS OF THE PETITION

During the trial judge's inquiry at the Article 39(a) session into the petitioner's understanding of his right to counsel (*see United States v. Donohew,* 18 U.S.C.M.A. 149, 39 C.M.R. 149 (1969)), the petitioner answered in the affirmative a question as to whether he wished "to be represented by a fully qualified civilian lawyer." The form of the question is different from that in Appendix A8–8 and A8–9, Guide-Trial Procedure, Manual, *supra. See United States v. Donohew, supra* at 152, 39 C.M.R. at 152; Department of the Army Pamphlet 27–9, Military Judges Guide, C3, June 1, 1971, at 9–3. That circumstance and the judge's reminder of detailed defense counsel of an informal discussion between them "sometime in the past" indicate that the trial judge had earlier made clear he proposed to inquire into qualifications of counsel other than his membership in the Philippine bar. Detailed defense counsel submitted a brief on the subject. Trial counsel said he had *no* brief because he felt that "most of the cases regarding this area of the law" were in the defense brief, but he argued extensively that, as a member only of the Philippine bar, Mr. Soriano was not qualified to act as petitioner's counsel at trial. The defense brief specifies the issue as follows:

1. Whether a civilian counsel who is a member in good standing of the Philippine bar, but who is not admitted to practice before the bar of any U.S. Federal Court or the highest court of

a state, is "otherwise qualified as a lawyer" within the meaning of MCM, 1969 (Rev.), Para. 48a.

2. If such civilian counsel is not "otherwise qualified as a lawyer" within the meaning of MCM, 1969 (Rev.), Para. 48a, whether the Court must, or whether the Court may, in its discretion refuse to allow the accused to be represented by the civilian counsel of his choice at a special court-martial.

The substance of the oral argument and the corresponding remarks by the trial judge are as follows:

| Military Judge | Trial Counsel | Defense Counsel |
|---|---|---|
| a. [D]o you know what . . . [civilian counsel's] qualifications are? | | The trial counsel and myself have entered into a stipulation of expected testimony . . . concerning his qualifications. [Appellate Exhibit II]. |
| b. Does the government wish to make anything a matter of record? | [The] Government would like a short oral argument . . . but nothing written. | [The defense is] [w]illing to stand on the brief. |
| c. | [T]hree cases . . . resolve the issue. . . . *United States versus Batts* . . . [and a combination of] *U. S. v. Kraskouskas* . . . [and] *United States versus Mayreis* [all *supra* in text] [establish] that foreign lawyers . . . were not . . . qualified . . . . The government would not object to Mr. Soriano . . . being allowed to sit at counsel table . . . but . . . [he should] not be allowed to . . . participate in the proceedings. | |
| d. Would you like to respond at all? | | No . . . those interpretations raised by the trial counsel are adequately discussed in the brief. |
| e. | There are also disciplinary considerations . . . . [W]e are in a foreign country and the civilian lawyer would . . . not be subject to any kind of control by . . . [the judge] . . . . [Y]ou could eject him from the court- | The Judge Advocate General has suspended foreign attorneys . . . . To automatically presume that . . . [Mr. Soriano would] act improperly, should not be the automatic conclusion. At this time, there . . . [is] no |

| Military Justice | Trial Counsel | Defense Counsel |
|---|---|---|
| | room, but other than that you would have no disciplinary control over him. There would not be control as far as ethical considerations in that . . . [Mr. Soriano is] not connected with any American or state bar. | . . . reason . . . [to] disqualify him from representing . . . [his] client in this case. |
| f.  Could this court hold Attorney Soriano in contempt of court and sentence him to jail? | | The question . . . is unanswered at this time.  I believe that the court . . . [cannot]. . . . [T]he Court could require . . . [Mr. Soriano's] removal from the courtroom and . . . could apply to have him suspended before courts-martial in the future. |
| g.  For the purpose of appearance at this court-martial, as counsel for the accused, I . . . rule that Attorney Soriano is not a qualified counsel. However, he will . . . be allowed to sit at the counsel table.  However, he will not be allowed to address the military judge, court members, or any witnesses. | | [T]he defense requests a continuance . . . [for the purpose of applying for an] extraordinary writ to obtain a determination of whether the decision in this case was correct or whether the accused was denied his right to counsel. |

The separate opinions of my Brothers seem to inveigh against *per se* disqualification of a lawyer admitted to any recognized foreign bar.  If their pronouncements do proscribe *per se* disqualification, then they are wrong in denying the petitioner relief because the record irrefutably demonstrates that the trial judge prohibited Mr. Soriano from acting as chief counsel [13] only because he was a member of the Philippine bar and not a member of an American bar.  If their anticipation that *per se* disqualification will not be invoked is merely supplicatory, why do they speak of it?  Their decision sanctions *per se* disqualification of a member of a recognized foreign bar.  Why should any sensible trial judge not disqualify counsel for that reason, and avoid possible reversal for an abuse of discretion if he excludes because he considers counsel incompetent or unknowledgeable?  Are the majority signaling that their anticipation may become precept if trial judges generally take the easy course of *per se* disqualification? [14]  The possibility that they may be doing so impels me to comment briefly on flaws in the rule they propound.

13.  Article 38(b), Uniform Code of Military Justice, 10 U.S.C. § 838(b), provides that when an accused retains civilian counsel the detailed defense counsel will be excused unless the accused requests that he be retained as "associate" counsel.

14.  *Cf. United States v. McOmber*, 1 M.J. 380 (C.M.A.1976), and *United States v. Allums*, 5 U.S.C.M.A. 435, 18 C.M.R. 59 (1955).

I disagree with the majority's assumption that an American lawyer is competent but that a foreign attorney is not even minimally qualified. I have already commented on the unreality of the former assumption, 9 M.J. at 229–230; the latter is, in my opinion, refuted by the persuasive and commonsense assumption that an accused with financial resources would not entrust his liberty and his social, professional, and economic future to a lawyer whom he has no good cause to believe can represent him competently.

I disagree with the majority's failure to say anything as to how their rule should be applied. The majority opinion does not instruct a trial judge that he must fairly and adequately inquire into counsel's competence. Apparently then, if counsel fails to present, on his own initiative, sufficient evidence of his knowledge of the law, the judge can summarily order him to leave the courtroom. How does counsel go about proving his competence? Must he recite from memory the elements of the offenses charged and the standard instructions as to the burden of proof, etc., provided by Article 51(c), U.C.M.J., 10 U.S.C. § 851(c)? Does he fail to qualify if he neglects to cite from memory the advice to which an accused is entitled at a "custodial interrogation"? These and many other questions have troubled me as I drafted this section of my opinion. In my judgment, they expose flaws in the majority's rule that impel a conclusion that the rule is contrary to the language and purpose of the provisions for civilian counsel in the Uniform Code and is unrelated to the realities of practice. If the majority intend, but simply have neglected, to say that the trial judge has a duty to inquire fully into counsel's capability, then I believe it unfair to subject counsel to a test, without limiting the subject matter to those principles of law perceived by the judge to be involved in the particular case and without providing him with reasonable notice of the areas of law on which he will be examined.

I disagree with the majority's failure to say anything as to the effect of a judge's ruling on counsel's right to represent other accused. The majority do not tell us whether a ruling favorable to counsel constitutes his admission to the "bar" of all Navy courts-martial within the country or all courts-martial worldwide, so that no later testing of counsel's competency may be required or permitted. They are similarly silent as to whether an unfavorable ruling is a determination that counsel cannot represent an accused in any Navy courts-martial, as trial counsel apparently contemplated in his contention that a decision would be a "general policy decision [for "future courts"] as opposed to a one time determination." If this is the majority's intention, I need only refer to my earlier remark that a trial judge of a particular court-martial has no authority to qualify or disqualify a person as counsel for an accused in court-martial proceedings.

Apparently, the majority intend their rule to be like that of a civilian court's admission *pro hac vice* of a lawyer who is a member of the bar of a different court or judicial system. If that is their intention, their rule is a strange mutant of the civilian *pro hac vice* admission.

The state of American law on admission *pro hac vice* is in disarray. "There are no uniform rules or statutes" on the subject in the Federal courts. Annot., 33 A.L.R.Fed. 799, 802 (1977). Recently, as regards state courts, the United States Supreme Court held that a lawyer admitted to the bar of one American state does not have a constitutional right "to appear *pro hac vice*" in the courts of another state,[15] but the Court avoided comment on the right of a defendant in a Federal prosecution to be represented by a nonmember of the bar of the court in which he is to be tried.[16] The Court of Appeals for the Third Circuit has held that, in a Federal criminal case, the defendant's right to counsel includes the right to a lawyer admitted to the bar of any

---

15. *Leis v. Flynt*, 439 U.S. 438, 443–44, 99 S.Ct. 698, 701–02, 58 L.Ed.2d 717 (1979).

16. *Id.* at 442 n. 4 and 445–46 n. 2, 99 S.Ct. at 701 n. 4 and 702–03 n. 2 (Stevens, J., dissenting).

state, and to deny an out-of-state counsel of defendant's own choosing the right to represent him at trial "vitiate[s] the guarantees of the Sixth Amendment." *United States v. Bergamo*, 154 F.2d 31, 35 (1946), *reaff'd.* in *Cooper v. Hutchinson*, 184 F.2d 119, 121 (3d Cir. 1950). In *In re Evans*, 524 F.2d 1004, 1008 (5th Cir. 1975), the court held that, "[i]n the absence of a complaint rising to a level justifying disbarment," the United States District Court had no power to deny *pro hac vice* admission in a criminal case to a lawyer who was a member of the bar of a state; accordingly, it granted defendant's application for a writ of *mandamus*. Conversely, in *Thomas v. Cassidy*, 249 F.2d 91 (4th Cir. 1957), *cert. denied sub nom. Fitzgerald v. Cassidy*, 355 U.S. 958, 78 S.Ct. 544, 2 L.Ed.2d 533 (1958), the Court of Appeals considered admission *pro hac vice* a privilege, and it indicated that denial of the privilege was not reviewable on appeal.

A generation ago, Judge Brosman noted that this Court was freer than most to sort through competing judicial concepts to select those deemed most suitable to military practice. Brosman, *The Court: Freer Than Most*, 6 Vanderbilt L.Rev. 167 (1953). Congress, however, has spoken on the matter before us, and has left, in my opinion, fewer interstices for judicial supplementation than the majority have found. While I cannot accept their rule, for the purposes of my dissent, I take it as it is.

Apparently, the majority prescribe a more expansive standard for review of an abuse of discretion in the denial of admission *pro hac vice* than that for review of other discretionary rulings. They enjoin a trial judge not to act "in a niggardly fashion." With that in mind, let us turn to the evidence.[17] Arranged differently, and somewhat rephrased, I set out below the evidence I deem material:

1. Mr. Soriano was admitted to the bar of the Supreme Court of the Republic of the Philippines in 1950. That bar is integrated.

Mr. Soriano prepared for the bar by taking "a law course of 4 years" and a bar examination. He is not a member of the bar of an American jurisdiction.

2. Instruction in law school, and the areas of law the bar examination covered, included civil law and civil procedures, criminal law and criminal procedures, commercial law, tax law, labor law, and legal ethics. Since 1903, when the United States assumed responsibility for the administration of the Philippine Islands, "American jurisprudence . . . infused . . . Philippine law." American law of evidence was introduced into the Philippine courts; the corporate law was "basically" a copy of the corporate law of the United States; the law on "judicial ethics . . . and [professional responsibility] is also the same as [in] the United States." Wigmore on Evidence and the Model Code of Evidence are widely used by Philippine lawyers. Decisions of the United States Supreme Court are cited by the Philippine Supreme Court and other courts of the Republic. When the Jones Act of 1916 (39 Stat. 545) provided for Philippine autonomy, it became the "Constitution" of the Philippines until the country attained its independence. The Act "almost copied . . . the United States Constitution," and was later incorporated into the Philippine Constitution. The current constitution embodies the Bill of Rights of the United States Constitution.

3. The national language of the Republic is Tagalog, but English is used in the law schools for instruction and in the courts.

4. Mr. Soriano served in the United States Army as an officer from July 1946 to July 19, 1948. During that period, he acquired a "very substantial knowledge" of military justice proceedings. He attended a Judge Advocate General seminar on courts-martial procedures and lectures on military justice by Judge Advocate officers. Although not specifically stated, it may be

---

17. Ordinarily, I would review the correctness *vel non* of a trial judge's ruling only on the evidence before him at the time of his ruling. However, the judge considered additional matter in denying an application for reconsideration, and more material was allowed by the Court to be filed with the Petition. The majority have considered "all relevant exhibits filed," and I do the same.

fairly inferred that he was familiar with the current military justice system of the United States. He avers that the Philippine military justice system is "very, very similar to the military justice system in the United States armed forces"; it provides for a Judge Advocate General Service, has three courts-martial, general, special, and summary; and trial and defense counsel function like their counterparts in the American armed forces.

5. Between 1950 and 1971, Mr. Soriano practiced law in the Philippines, specializing in labor law. In 1958, he attended school in Indiana for labor law courses; and in 1960, he completed a 3-month course in trade union law at Harvard University. In 1971, he came to the United States for a 7-year period. During that period he served as:

    a. A VISTA lawyer assigned to the Legal Aid Foundation, Los Angeles (June 1973 to August 1974). His responsibilities included:

    (1) acting as "House Counsel" for client groups;

    (2) research of federal, state and municipal statutes and administrative rules and regulations "relevant to issues under litigation";

    (3) preparation of legal memoranda; and,

    (4) representing clients at administrative hearings.

    b. Legal researcher and law clerk to the First Assistant City Attorney, Gary, Indiana (May 1975 to June 1977). He had investigative and research responsibilities and assisted his superior in court appearances.

    c. Referee (Hearing Officer), Appeals Section, Bureau of Employment and Security, Illinois Department of Labor (February 1978 to June 1978). In that position he held hearings and rendered decisions on claims.

6. Mr. Soriano is a member of the International Law Section, American Bar Association.

7. After "considerable research," the New York State Board of Law Examiners determined that two Philippine law schools provide a legal education that is "the equivalent to that which is provided by American Bar Association approved law schools." As allowed by the rules of the court on admission to practice as an attorney in another jurisdiction, the Court of Appeals for the State of New York, the highest court of the state, admitted to practice a Philippine attorney on proof that he had been admitted to the Philippine bar in 1956 and had served as an attorney in the Philippines for more than 5 years.

8. Members of the Philippine bar "appear with regularity as civilian defense counsel before U.S. military courts-martial in the Philippines."

On this record of training and performance, I unhesitatingly conclude that under any standard of review of a trial court's discretion, the trial judge here abused his discretion by denying the accused the right to representation by Mr. Soriano. I would, therefore, reverse his order and I would remand the record of the proceedings to the court-martial, or its successor, if any, with direction that the judge allow Mr. Soriano to represent the petitioner at the trial.